UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MPT, Inc.,** | ) | CASE NO. 1:04 CV2357 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| **Marathon Labels, Inc., et al.,** | ) | **Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon two discovery disputes between plaintiff and certain defendants. On July 1, 2005 and July 19, 2005, defendants sought, via letters, the Court's assistance in resolving the disputes. The Court treated the letters as motions to compel and set a briefing schedule. The motions are now fully briefed. For the reasons that follow, the motions are DENIED.

**DISCUSSION**

Plaintiff, MPT, Inc. brings this patent infringement action against defendants, MPT, Inc.,

1

Marathon Durable Labeling Systems LLC, Polymeric Converting LLC and Sunbelt Consulting Group, LLC.  Plaintiff alleges that defendants infringe U.S. Patent Nos. 5,417,790 ('790 Patent) and RE37,164 ('164 Patent).

**July 1 Motion**

A.  Interrogatories

In their July 1, 2005 motion, defendants Sunbelt Consulting Group and Polymeric Converting LLC (hereafter "defendants") move the Court to compel responses to Interrogatory Nos. 13 and 14.  Interrogatory No. 13 provides,

> State whether MPT owns United States published application US 2003/D145945 A1, published August 7, 2003 (hereafter "Patent Application") and identify all documents that relate to your answer.

Plaintiff objected to this interrogatory on the grounds that it seeks information that is not likely to lead to the discovery of admissible evidence.

It appears that defendants inadvertently propounded two interrogatories numbered 14.  Plaintiff concedes that both are at issue in this dispute.  For ease of reference, the Court will refer to them as Interrogatory No. 14A and Interrogatory No. 14B.  Interrogatory No. 14A provides,

> State whether MPT contends that the term "release coated" as used in the claims of the '790 Patent has a meaning that is the same as the term "release surface" in the claims of the Patent Application.  If MPT does so contend, explain in detail the reason(s) for the contention and identify all documents relevant to your answer.

Interrogatory No. 14B provides,

> Explain in detail the reason(s) why the term "release surface" is used in the claims of the Patent Application and not the term "release coating," which is used in the patents in suit and identify all documents that relate to your answer.

Plaintiff objected to both of these interrogatories on the grounds that the information is

not likely to lead to the discovery of admissible evidence because the Patent Application is neither at issue in the present lawsuit nor a continuation of a patent at issue in the lawsuit.

Defendants argue that they are entitled to discovery of this information because the Patent Application is relevant to the interpretation and claim construction of the patents in suit. According to defendants, the product accused of infringement does not have a "release coating." Defendants argue that discovery concerning the Patent Application is relevant because it may show that an MPT principal used the term in a manner that contradicts its position in this lawsuit.[1] According to defendants, the aforementioned discovery is also relevant because it may demonstrate that one skilled in the art recognizes the difference between certain terms. Defendants further appear to argue that the conduct of plaintiff's counsel in questioning witnesses concerning "RFID technology[2]" undermines plaintiff's position as to the relevancy of this discovery.

Plaintiff responds that the Patent Application covers RFID technology, which is wholly unrelated to the patents in suit. Plaintiff also argues that the Federal Circuit has held that the prosecution history of an unrelated patent is not relevant to claim construction even when the unrelated patent shares both a common subject matter and inventor. In this case, the patents in suit and the Patent Application do not even share a common inventor. According to plaintiff,

---

[1] Defendants initially argue that plaintiff alleges infringement under the doctrine of equivalents. Defendants admit, however, that plaintiff indicated during discovery that it is not relying on this doctrine to establish infringement.

[2] It appears that the patents in suit involve a method for labeling and relabeling containers. According to plaintiff, RFID technology or "radio frequency identification tags" is unrelated to the patents in suit.

3

defendants currently have their own patent application involving RFID pending and defendants are improperly attempting to gain a competitive advantage with regard to the RFID technology. Plaintiff further claims that the protective order that is in place is insufficient to protect it because defense counsel in this case is also prosecuting defendants' RFID patent application.

In response, defendants argue that information regarding the Patent Application is relevant because the application expressly incorporates by reference the text of the patents in suit. Defendants also argue that the facts underlying the Patent Application are discoverable under Federal Rule of Evidence 613 and Federal Rule of Civil Procedure 26(b)(1), which address prior inconsistent statements and the discovery of impeachment evidence.  Defendants further claim that the Patent Application may be used to judicially estop plaintiff from asserting its proffered claim construction.   In addition, defendants provide evidence that its attorneys in this case are no longer prosecuting the RFID patent.  As such, plaintiff's argument that defendants are attempting to gain an unfair competitive advantage is misguided.

In reply, plaintiff argues that even though the Patent Application incorporates the text of the patents in suit, the Patent Application is nonetheless irrelevant.  According to plaintiff, this argument was rejected by the Federal Circuit in *Abbot Labs. v. Dey*, 287 F.3d 1097 (Fed. Cir. 2002).  Likewise, plaintiff argues that *Abbot Labs.* rejected defendants' argument that the Patent Application can be used to estop plaintiff during the claim construction process.

Upon review of the relevant law, the Court finds that defendants are not entitled to the requested discovery because it is not relevant to this lawsuit.  In *Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), the Federal Circuit addressed the relevancy of claims contained in an unrelated patent.  The court concluded as follows,

4

> [Appellant] does not dispute that the patents in suit describe the seven-segment pattern in exemplary language. Instead, [appellant] argues that [an unrelated patent] establishes that the same inventor represented matrix displays and seven-segment displays as two separate embodiments of the same invention. We fail to understand the relevance of [appellant's] argument. Whether or not the claims in an unrelated patent are broad enough to encompass both a matrix and the familiar seven-segment pattern, this proposition sheds no light on whether the claims of the patents in suit are limited to the seven segment pattern.

*Id*. at 1211.

Like *Telegenix*, the Court finds that the claims contained in the Patent Application are not relevant to determination of the meaning of the claims at issue in the patents in suit. The Patent Application is not a continuation, continuation-in-part or divisional patent to the patents in suit and, as such, no formal relationship exists between the claims in each document.[3] Based on *Telegenix*, the Court finds that the discovery sought by defendants relating to the Patent Application is not relevant to this dispute.

Defendants argue that *Telegenix* is not controlling because the case did not involve a discovery dispute. According to defendants, the fact that the prior patent was discussed in the case necessarily means it was subject to discovery. This Court rejects defendants' argument. In *Telegenix* defendant simply pointed to the claims in the unrelated patent, which were contained in a public document readily available to defendant. There is no indication that any party took discovery on this issue. Moreover, even if the parties in *Telegenix* took discovery of the

---

[3]   Defendants argue that because the Patent Application "incorporates by reference" the patents in suit, information related to the Patent Application is discoverable. Defendants, however, cite no authority for this proposition. Absent any authority or explanation as to why "incorporation by reference" should be construed as a related patent, the Court rejects defendants' assertion. Moreover, as plaintiff points out, the patents in suit and the Patent Application do not share a common inventor.

5

unrelated patents, the case cannot be read as broadly as defendants suggest, i.e, that such discovery is *permitted*.  At best, *Telegenix* is silent on the issue. Given its holding that claims in unrelated patents are not relevant for purposes of claim construction, it would be impossible to reconcile the holding with defendants' assertion that discovery of such material is allowed. Accordingly, the Court finds that, absent additional argument from defendants, *Telegenix* precludes discovery into the Patent Application.

Defendants further argue that the Federal Circuit did not foreclose discovery of patent documents demonstrating how one of "ordinary skill in the art" would interpret a claim term. Nor did the court abandon the well-established principle that ordinary meaning in the art is relevant to claim construction.   In response, plaintiff argues that the Patent Application is not relevant to evidence how "one skilled in the art" would understand the terms at issue in the patents in suit.  Plaintiff argues that such an analysis is conducted from the vantage point of "one skilled in the art" at or around the time of the claimed invention.  In this case, plaintiff points out that the Patent Application was submitted over a decade after protection for the patents in suit was sought.  Defendants ask the Court to reject this argument because it is not supported by evidence and may be relevant to show how terms in the patents in suit changed meaning over the years.[4]

Upon review, the Court agrees with plaintiff.  Plaintiff provides the Court with authority indicating that evidence of how one of "ordinary skill in the art" would interpret a claim term should be analyzed from the viewpoint of one skilled in the art at the time the application for the

---

[4] For purposes of clarity, this Court incorporated some of the relevancy arguments raised in connection with the July 19 motion. The parties also combined the relevancy arguments in their briefs.

patent in suit was filed. *See, e.g.*, *Moba v. Diamond Automation*, 325 F.3d 1306., 1315 (Fed. Cir. 2003)("as this court has repeatedly counseled, the best indicator of claim meaning is its usage in context as understood by one of skill in the art *at the time of invention*")(emphasis added). Defendants, on the other hand, provide no authority for the proposition that evidence of "how claims change over time" is relevant to a claim construction analysis. Nor does the Court accept defendants' argument that evidence is needed to establish plaintiff's position on this point.

The Court further rejects defendants' claim that evidence related to the prosecution of the Patent Application is relevant to establish estoppel. This argument was expressly rejected in *Abbot Labs*, wherein the Federal Circuit concluded that a claim of estoppel cannot be based on statements made during the prosecution of an unrelated patent. *See*, *Abbot Labs*., 287 F.3d at 1104-05.

Similarly, defendants fail to convince the Court that information gathered during the prosecution of the Patent Application is discoverable as impeachment evidence or to demonstrate prior inconsistent statements/statements against interest. Defendants rely on *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 311 F.3d 1384 (Fed. Cir. 2003) in support of their position that it is "well settled" that statements against interest may be used during the claim construction process. *Middleton*, however, stands for no such proposition. If anything, *Middleton* supports plaintiff's position that any evidence of one "skilled in the art" must be taken from the vantage point of one skilled in the art at or near the time of invention, not ten years after the fact. Specifically, the court held,

> Patent terms are not subject to later revision by a supply contract. If a contract supplies some insight into the understanding of skilled artisans *at the time of invention*, it may have some relevance to claim construction....

7

*Middleton*, 311 F.3d at 1389 (emphasis added).

In short, defendants provide the Court with no authority suggesting that the prosecution of an unrelated patent is admissible for impeachment purposes or to show either prior inconsistent statements or statements against interest.

Based on the foregoing, the Court finds that defendants are not entitled to the discovery sought in Interrogatories 13, 14A, 14B because they seek information that is not relevant nor likely to lead to the discovery of admissible evidence.

B. Document Request

Defendants also move to compel documents pursuant to Document Request No. 5, which seeks,

> All documents, including letters, that passed between The Kennedy Group and or MPT and/or the inventor, on the one hand, and attorneys of the firm Watts Hoffman Fisher & Heinke Co., on the other hand, in addition to the November 30, 1994 [letter] to Watts Hoffman Fisher & Heinke Co. that is of record in the file history of the '790 Patent.

Plaintiff objected on this Request on the grounds that it seeks information protected by the attorney-client privilege.

According to defendants, plaintiff waived the right to assert the attorney-client privilege because it voluntarily disclosed to the Patent Office a letter sent by an MPT executive to the Watts, Hoffman law firm.[5]  The first two sentences of the letter provide, "[h]ere are additional

---

[5] Although expressly indicating that the letter is between "an MPT executive" and patent counsel, defendants argue for the first time in their reply brief that the privilege does not belong to MPT. Rather, it appears that defendants argue the '790 Patent was assigned to the Kennedy Group before a purported assignment to Michael Kennedy. As such, the communications were between non-party Michael Kennedy and his attorneys. As this Court has often held, however, arguments raised for the first time in a reply

8

comments for my declaration. Use the ones you feel are appropriate." The letter goes on to describe various aspects of the proposed patent and essentially makes arguments in favor of issuance of the patent.

Plaintiff in essence argues that the letter is not privileged because it does not contain confidential information. According to plaintiff, it gave the information contained in the letter to its prosecution counsel with the intention that the information be made public. Plaintiff claims that there was never any intention to waive the attorney-client privilege as to any matter. Plaintiff further argues that even if the letter is construed as a waiver, it would be limited only to the explicit subject matter set forth in the letter. Plaintiff points out that Request No. 5 is not limited in any fashion and, instead seeks every document that ever "passed between" plaintiff its patent prosecution counsel.

Upon review of the document request, the Court finds that defendants' motion must be denied. Although the Court leaves open the question of whether the document itself is subject to the attorney-client privilege, there is no doubt that the document request is overly broad as drafted. The request seeks, without limitation, every document that ever passed between the Kennedy Group, MPT or the inventor and the Watts, Hoffman law firm. There is no temporal limitation on the request, nor is it limited in subject matter. Conceivably, this request seeks information wholly unrelated to any issue in this case. Thus, even assuming that the November 30 letter is subject to the attorney-client privilege and that the disclosure of the letter waived the

---

brief will not be considered because the opposing side does not have an opportunity to respond to the argument.

privilege, the request is overbroad as drafted.[6] Accordingly, defendants' motion to compel must be denied.

**July 17 Motion**

In the July 17 Motion, defendants move the Court to compel responses to certain questions asked at the July 14th deposition of Patrick Kennedy, the named inventor on the Patent Application. According to defendants, they sought the following information at the deposition,

- the scope of the invention set forth in the Patent Application;

- the notes or sketches Kennedy prepared when he conceived his invention, without the advice of patent counsel;

- the origin of the contents of the Patent Application;

- the meanings he attributes to the claim terms contained in the patents in suit and the Patent Application;

Plaintiff's counsel instructed the witness not to answer questions related to these topics on the grounds that the questions sought information that is both irrelevant and protected by the attorney-client privilege. Some of the objections were based solely on relevance.

In support of their position that the information sought is relevant, defendants make the same arguments set forth above. Defendants further claim that objections based on relevance alone are improper. In addition, defendants argue that the information sought is not protected by

---

[6] Defendants do not expressly seek to limit the request. In their reply brief they do, however, indicate that disclosure of the letter waived any applicable privilege and, as such, "defendants [are] entitled to discovery regarding the broad subject matter of the letter including the prosecution of the patents-in-suit." The Court finds that this statement is insufficient to allow the Court to modify the request in any cogent manner, even if such a request had been made.

10

the attorney-client privilege. Defendants further argue that Kennedy was permitted to answer some questions relating to the Patent Application and, as such, he waived any applicable privilege.

In response to defendants' relevancy arguments, plaintiff essentially presents the same arguments set forth above in the context of the written discovery. In addition, plaintiff claims that much of the information sought is protected by the attorney-client privilege. Plaintiff also argues that it permitted Kennedy to respond to questions concerning the patent claims at issue in this lawsuit and the meaning of disputed terms, provided the questions did not involve the Patent Application.

This Court has concluded that defendants are not entitled to written discovery concerning the Patent Application because it is neither relevant nor likely to lead to discovery of admissible evidence. Defendants make no additional arguments that were not considered by the Court and rejected. Accordingly, for the reasons stated above, the Court finds that defendants are not entitled to redepose Kennedy. As a result, the Court need not reach the issue of whether the information is also protected by the attorney-client privilege.

As a final matter, the Court feels compelled to address defendants' argument regarding the use of relevancy objections during a deposition. As a general matter, the civil rules prohibit an attorney from instructing a witness not to answer questions based on relevancy. *See* Fed. R. Civ. Pro. 30(d)(1). Rather, the appropriate course is to seek a protective order *during the deposition*. *See* Fed. R. Civ. Pro. 30(d)(4)(emphasis added). In this case, however, the dispute as to the relevancy of the Patent Application was pending before the Court at the time of the

deposition.[7]  Although counsel should have moved for a protective order during the deposition, the Court finds that, on the unique facts of this case, defendants are not entitled to redepose Kennedy.  Given that the issue of the relevancy of the Patent Application was pending before the Court, together with the amount of resources that would be wasted on an irrelevant inquiry, requiring Kennedy to appear for a second deposition makes no sense.  The Court strongly cautions counsel, however, that relevancy objections made during a deposition are not proper and may result in the imposition of sanctions in the future.

### **CONCLUSION**

For the foregoing reasons defendants' motions to compel are DENIED.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan  
PATRICIA A. GAUGHAN  
United States District Judge

Dated: 8/23/05

---

[7] On July 1, 2005, defendants moved to compel responses to the interrogatories on the grounds that information related to the Patent Application is relevant to this dispute.  Upon receipt of the letter, the Court set a briefing schedule.  The deposition occurred during the course of the briefing schedule.