UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MPT, Inc.** | ) | **CASE NO. 1:04 CV 02357** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Marathon Labels, Inc.,** | ) | |
| **Marathon Durable Labeling** | ) | **Memorandum of Opinion and Order** |
| **Systems LLC, and** | ) | |
| **Polymeric Converting, LLC** | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon a Motion by Defendants, Marathon Labels and Polymeric Converting, for Leave of Court to Amend their Answers to Assert Additional Counterclaims of Inequitable Conduct. (Doc. 80). This case arises out of defendants' alleged infringement of plaintiff's patents. For the reasons that follow, defendants' motion is GRANTED.

1

**FACTS**

Plaintiff MPT, Inc. is the assignee of U.S. Patent No. 5,417, 790 (the "'790 patent") and Reissue Patent No. RE 37,164 E (the "'164 patent"). Defendants Marathon Labels, Inc. and Polymeric Converting LLC (collectively "Defendants") are two of three defendants accused of infringing those patents.

The inventions claimed in the '790 and '164 patents were invented by Robert Petrou. A law firm (the "prosecuting firm") was employed to prosecute the inventions before the United States Patent and Trademark Office ("PTO"). As part of this process, the prosecuting firm hired a second law firm (the "search firm") to search for items or publications that might be cited as prior art to the invention. The search firm responded to the prosecuting firm with a prior art search that listed 11 patents and an IRS 1040 label. (Defs' Ex. C). The prosecuting firm filed patent application No. 07/955,119 (the "'119 application") on October 1, 1992, approximately two months after it received the prior art search from the search firm. (Defs' Ex. E p. 1).

The '119 application included an information disclosure statement ("IDS") of "information which may be material to the examination of this application[.]" (*Id*. pp. 31-32). The IDS disclosed the patents from the prior art search but did not disclose the IRS 1040 label. (*Id*.). The prosecuting firm supplemented its initial IDS with a copy of an IRS 1120 mailing label on September 27, 1993. (*Id*. pp. 41-43). That supplemental IDS did not describe the label in any detail, and it is unclear whether an actual label was supplied or merely a photocopy of the label. (*See id*.). Patent examiners typically indicate that they have reviewed a cited reference by initialing the IDS form. (Barlow Dep. pp. 104-06; *see also* Defs' Ex. E p. 32). Because the examiner did not initial the supplemental IDS form, it is unclear whether the IRS 1120 label was

2

ever considered by the patent examiner. (Barlow Dep. p. 106).

As prosecution continued, the '119 application was abandoned in favor of continuation-in-part application No. 08/292,882 (the "'882 application"), which eventually issued as the '790 patent. (Defs' Ex. H p. 1). The portions of the prosecution history for the '882 application provided with this motion do not mention the IRS labels. (*See* Defs' Ex. G). Prosecution of the '882 application was also continued through continuation application No. 08/443,202 (the "'202 application"). (Defs' Ex. H p. 1). The portions of the prosecution history for the '202 application provided with this motion do not mention the IRS labels. (*See* Defs' Ex. H). The '202 application matured into U.S. Patent No. 5,628,858 (the "'858 patent"), which eventually reissued as the '164 patent.

Defendants claim that the prosecuting firm made numerous arguments during the prosecution of these applications that would have been foreclosed had the IRS labels been disclosed or explained to the PTO. Namely, the prosecuting firm argued on multiple occasions that the prior art did not disclose a placard with a release coated surface, a structure that Defendants believe is predicted by the IRS labels. (*See* Defs' Ex. E pp. 40, 51-52; Ex. G pp. 48-49, 67, 79; Ex. H pp. 48-49, 79). Defendants also note that one reason the patent examiner allowed the '202 application to be granted as the '858 patent was because "the prior art fails to teach a placard having a release coated surface for attachment to a pressure sensitive adhesive coating of a label." (Defs'Ex. H p. 84). Again, Defendants argue that the IRS labels teach this distinguishing feature.

The prosecution histories, or file wrappers, of the '164 and '790 patents are public documents that have been available to Defendants since the outset of this litigation. Thus,

3

Defendants should have reviewed the applicant's arguments before the patent office early in this litigation.  However, the file wrappers' only disclosure or discussion of the IRS labels was the supplemental IDS provided with the '119 application.  The outside activities of the applicant and his attorneys—including the prior art search—were not known to Defendants until recently.

Defendants sought the prior art search early in discovery, but plaintiff initially refused to disclose anything outside of the file wrapper.  (Defs' Ex. I).  At the Court's request, the parties engaged in ongoing negotiations regarding the aspects of the prior art search that would be disclosed to Defendants.  (Doc. 65).  Defendants then received a first redacted copy of the prior art search that only included prior art patents.  Nonpatent prior art and the search firm's analysis of the prior art was redacted.  (Defs' Ex. D).  Following further negotiations, the search firm for the first time produced a more complete copy of the prior art search that included the IRS 1040 label on September 16, 2005.  (Defs' Ex. C).  This second copy still redacted all analysis of the prior art, including a comparison of the IRS 1040 label to the invention.  (Litman Dep. pp. 17, 152).  Defendants deposed a representative of the search firm on September 20, 2005, and filed their motion to amend on October 5, 2005.

Defendants argue that the new information regarding the IRS 1040 label gives rise to new counterclaims for inequitable conduct.  Both Defendants have presented amended answers and counterclaims[1] which allege that the "patents-in-suit are unenforceable and/or invalid based on a breach of the duty of candor" before the PTO.  (*See* Ex. A, Ex. B).

---

[1]  Defendants have attached to their motion Marathon Labels, Inc.'s Second Amended Answer to MPT's First Amended Complaint and Counterclaims (Ex. A) and the Second Amended Answer, Affirmative Defenses and Counterclaims of Defendant Polymeric Converting LLC (Ex. B).

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading shall be freely given "when justice so requires."  Fed. R. Civ. P. 15(a); *see also Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001).  In determining whether to grant leave to amend, this Court must consider several factors.  "Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision."  *Id*.  To deny a motion for leave to amend, a district court cannot base its decision on delay alone and, instead, must determine whether the amendment will cause significant prejudice to the nonmoving party.  *Duggins v. Steak 'N Shake*, 195 F.3d 828, 834 (6th Cir. 1999).  However, when an amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to request the amendment earlier.  *Wade*, 259 F.3d at 459.  Lastly, a motion for leave to amend may be denied for futility "if the court concludes that the pleading as amended could not withstand a motion to dismiss."  *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir.1986)).

**DISCUSSION**

Defendants seek to amend their answers to add counterclaims for inequitable conduct due to an alleged breach of the applicant's[2] duty of candor and good faith before the PTO.  (Defs' Ex.

---

[2] Although the Court will refer to the "applicant," this includes, for purposes of the inequitable conduct analysis, the assignee, attorneys, applicant, and "[e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the

A, B).  PTO regulations provide as follows:

> Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.

37 C.F.R. § 1.56(a).

Courts enforce the duty of candor and good faith through the doctrine of inequitable conduct.  *Molins PLC v. Textron*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).  As the name implies, inequitable conduct is an equitable doctrine whereby courts refuse to enforce patents in favor of an applicant who breached the duties of candor and good faith.  *Id.*  Inequitable conduct includes affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information, coupled with an intent to deceive.  *Li Second Family Ltd. P'shp. v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000).  When a claim of inequitable conduct is based on an applicant's failure to disclose material information, the party challenging the patent must show that the prior art information was material to patentability,[3] the applicant

---

> assignee or with anyone to whom there is an obligation to assign the application."  37 C.F.R. § 1.56(c).

[3]  Information "material to patentability" is defined as follows:

> Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>
> (2) It refutes, or is inconsistent with, a position the

had knowledge of the prior art and of its materiality, and the applicant intended to mislead the PTO through the failure to disclose the information. *FMC v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

Plaintiff opposes Defendants' motion. First, plaintiff alleges that the motion is untimely. Second, plaintiff claims that it would be prejudiced and unduly burdened by an amendment. Third, plaintiff believes that the counterclaim is not proper because it is merely an affirmative defense.

Plaintiff argues that the amendment is untimely because the "IRS label in question" was cited in the '119 application and thus was part of the publicly-available prosecution history that Defendants have known of since the beginning of this dispute. At the outset, the Court recognizes the Federal Circuit's aversion to unfounded inequitable conduct claims. *See, e.g., Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (opining that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague"). Accordingly, litigants may not assert inequitable conduct without first establishing a solid factual foundation for the claim. *See id.* (counseling that "an unsupported charge of

---

applicant takes in:

(i) Opposing an argument of unpatentability relied on by the Office, or

(ii) Asserting an argument of patentability

37 C.F.R. § 1.56(b).

Here, Defendants allege that the IRS 1040 label is material to patentability. Plaintiff has not challenged the merits of Defendants' counterclaims for purposes of this motion.

7

'inequitable conduct in the Patent Office' is a negative contribution to the rightful administration of justice"). One way to implement the Federal Circuit's holdings in this regard is to rigorously enforce Fed. R. Civ. P. 9(b). Because inequitable conduct claims draw their essence from fraudulent conduct before the PTO, parties must plead inequitable conduct with particularity. *See Ferguson Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (holding that "inequitable conduct, while a broader concept than fraud, must be pled with particularity").

With these requirements in mind, the Court finds that the Defendants' amendment is not untimely. First, only the IRS 1120 label was cited in the '119 application. Defendants' claims of inequitable conduct rely in large part on the IRS 1040 label that does not appear in the prosecution history of the patents. Second, applicant's supplemental IDS, filed nearly a year after the initial application, betrays no insight into the applicant's reasons for disclosing the IRS 1120 label or when the applicant became aware of the label. In light of the heightened pleading requirements for inequitable conduct claims, the fleeting reference to the IRS 1120 label available through the prosecution history simply was not adequate to support a claim of inequitable conduct at earlier stages of this litigation.

Third, Defendants did not have facts to support an inequitable conduct claim until recently. Knowledge of prior art and of that prior art's materiality are elements of an inequitable conduct claim. *FMC*, 835 F.2d at 1415. Defendants first received information tending to demonstrate the applicant's preapplication knowledge of the IRS labels' relevance to the invention on September 16, 2005. Defendants discovered that the redacted portion of the prior art search compared the IRS 1040 label to the invention when it deposed a representative of the search firm on Sept. 20, 2005. In other words, at that point the Defendants had evidence that the

applicant had knowledge of the materiality of the IRS 1040 label before the '119 application was filed. Defendants then filed their motion on October 5, 2005, mere weeks after the information tending to prove applicant's knowledge of the IRS 1040 label's relevance became available.

Although the amendment came late in discovery, Defendants should not be penalized when the factual basis for the amendment was not disclosed until late in discovery. This is particularly true in light of the Federal Circuit's holdings and Fed. R. Civ. P. 9(b). To strictly enforce rules limiting inequitable conduct claims at the outset of litigation but then refuse to allow meritorious claims to be added by amendment once information that satisfies the pleading rules becomes available would be fundamentally unfair.[4] Accordingly, the Court concludes that the amendment is not untimely.

Plaintiff also claims that allowing the amendment would "add an undue burden to MPT[,]" by requiring "MPT to spend much of the little time remaining on tangents rather than issues central to this matter such as Markman briefs and expert discovery." (Resp. Brf. p. 2). However, If plaintiff is correct that the counterclaims are "duplicative of affirmative defenses already pled and on which Defendants have had ample time to take discovery" (Resp. Brf. p. 3), there should be little need for further discovery. This is confirmed by Defendants' statements that "the bulk of time and expense spent on discovery related to the issue has been incurred" and

---

[4] This assumes that the party attempting to add an inequitable conduct counterclaim has been diligent during discovery. Here, as plaintiff admits, Defendants "sought discovery on the IRS label for at least seven months prior to filing their motion." (Resp. Brf. p. 2). However, Defendants did not receive the responsive answers that serve as the basis for the inequitable conduct claim—i.e., the revelation that the IRS 1040 label was disclosed and analyzed in the prior art search—until less than a month prior to filing their motion.

"the present December 1, 2005 cutoff date for fact discovery allows ample time for any discovery Plaintiff may require on the issue."[5] (Reply Brf. p. 9). Given the parties' agreement in this regard, the Court does not perceive an undue burden on plaintiff.

Finally, plaintiff does not argue that Defendants' amendment would be futile. Instead, plaintiff claims that inequitable conduct is not a proper counterclaim, citing the fact that a popular treatise on patent law includes inequitable conduct within its chapter on affirmative defenses. *See* Chisum on Patents § 19.03. Defendants correctly point out that the Federal Circuit has allowed counterclaims of inequitable conduct on many occasions. *Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1352, 1362 (Fed. Cir. 2005); *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 410 F.3d 690, 695, 701 (Fed. Cir. 2005); *Elk Corp. of Dallas v. GAF Building Materials Corp.*, 168 F.3d 28, 29-30 (Fed. Cir. 1999).

In sum, plaintiff has not provided any valid reason why Defendants' motion should not be granted. Instead, the Court finds that Defendants have diligently pursued this matter during discovery but only acquired facts capable of satisfying the pleading rules recently. In light of Federal Rules' admonition that a leave to amend should be freely granted when justice so requires, the Court grants Defendants' motion.

---

[5] Indeed, Defendants imply that they will require no further discovery on this matter following a 30(b)(6) deposition of plaintiff scheduled for November 14, 2005. (Reply Brf. p. 9 n. 18).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion for Leave to Amend their Answers to Assert Additional Counterclaims of Inequitable Conduct.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/22/05