**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MPT, Inc.** | ) | **CASE NO. 1:04 CV 2357** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Marathon Labels, Inc.,** | ) | |
| **Marathon Durable Labeling** | ) | **Memorandum of Opinion and Order** |
| **Systems LLC, and** | ) | |
| **Polymeric Converting, LLC** | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion to Compel of Defendant Polymeric Seeking Disclosure of Documents and Things Pursuant to Fed. R. Civ. P. 34 and 37(a) (Doc. 91) and the Motion of Defendant Polymeric Seeking to Compel Disclosure Pursuant to Fed. R. Civ. P. 37(a) (Doc. 105).[1]  The Court GRANTS the motions in part and DENIES the motions in part.

---

[1] Polymeric has also filed Defendant, Polymeric's, Motion to Compel Production of Documents Previously Requested Under Subpoena Duces Tecum from the Kennedy Group (Doc. 97).  That Motion has been resolved in full in a separate Opinion and Order.  That Order also addresses many issues from the Motion to Compel of Defendant Polymeric Seeking Disclosure of Documents and Things Pursuant to Fed. R. Civ. P. 34 and 37(a) (Doc. 91).  The single exception is whether a patent search report is discoverable, an issue that is discussed in this Opinion and Order.

**BACKGROUND**

Plaintiff MPT, Inc. ("MPT") accuses Polymeric Converting LLC ("Polymeric") and other defendants of infringing certain claims of U.S. Patent No. 5,417,790 (issued May 23, 1995) (the "'790 patent") and U.S. Patent No. RE 37,164 E (issued May 8, 2001) (the "'164 patent"). Throughout this litigation, MPT has refused to provide some documents on the basis of privilege. Polymeric challenges MPT's assertion of privilege as to many of those documents, and seeks an Order compelling MPT to produce documents from its privilege logs.

The patent application that ultimately resulted in the '790 and '164 patents was filed in 1992. Prior to filing, the law firm in charge of prosecuting the application (the "prosecuting firm") before the United States Patent and Trademark Office ("PTO") hired a second law firm to perform a search report (the "search firm"). The prosecuting firm relayed information regarding the invention to the search firm, which used that information to perform the search. The search report that the search firm submitted to the prosecuting firm listed references that might be relevant to the invention as well as a narrative comparing the invention to the references. MPT has already provided Polymeric with a list of the references but claims that the narrative is privileged.

Numerous other documents were created and exchanged throughout patent prosecution. Some documents were internal within the prosecuting firm, while others were exchanged with the client. MPT has produced a privilege log detailing, for each document, the originator, recipient, type of document, and any privilege that has been claimed. MPT has also provided the position of each individual named in the privilege log. As will be discussed in more detail below, Polymeric argues that certain of these documents are not privileged, either because the

privilege asserted is unavailable for that document or because the individual named in the privilege log cannot claim the privilege.

While prosecution was ongoing, the rights to the applications, and thus the patents, were transferred a number of times. The patent application that eventually resulted in the '790 and '164 patents was originally assigned to the Kennedy Group, Inc. ("TKG"). TKG assigned its interest to Michael Kennedy in 1994, who thereafter assigned his interest to MPT in 1995. All three have attempted to assert privilege over documents related to prosecution. Polymeric argues that any privilege that existed has been waived by the exchange of documents between TKG and MPT, which are separate corporate entities. MPT counters that it shares a common interest with TKG,[2] allowing the entities to communicate privileged information without waiving the privilege.

Although TKG is not a party to this litigation, it has been the subject of discovery sought by defendants. MPT's law firm represents TKG in this case and has represented TKG since 1997. MPT and TKG have asserted privilege over communications between their joint counsel and TKG personnel. Polymeric believes that these communications are not privileged. MPT again relies on its common interest with TKG.

---

[2] MPT and TKG were closely related at the time the patents were assigned and remain so today. MPT is owned by Michael, Patrick and Todd Kennedy. These three brothers are part owners of TKG along with their parents. Michael Kennedy is the president of MPT and the president and chief operating officer of TKG. With respect to their current business relationship, MPT has granted TKG a nonexclusive license to make and sell products for use in the patented method.

**STANDARD OF REVIEW**

Rule 26(b) allows "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Matters can be privileged under either the attorney-client privilege or the work product doctrine. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). However, the privilege may be waived. *Id.* at 307.

Because this is a patent case, it is necessary to determine whether Sixth Circuit or Federal Circuit law should apply. There are two critical issues for this motion: 1) whether certain common activities that occur during patent prosecution are protected by the attorney-client privilege or work product doctrine; and 2) whether the disclosure of privileged information to a related third party during patent prosecution or litigation waives the privilege or remains protected under the community of interest doctrine.

The Federal Circuit "appl[ies] regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (1) pertain to patent law, . . . (2) bear an essential relationship to matters committed to our exclusive control by statute, or (3) clearly implicate the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction . . . ." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001) (internal citations omitted). Application of the privilege to documents created during patent prosecution "is unique to patent law because [these documents] relate[] to an invention submitted for consideration for possible patent protection; it clearly implicates substantive patent law." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000). On the other hand, "[b]ecause waiver by the disclosure of privileged material does not meet any of these criteria," Sixth Circuit law applies to waiver and community of interest issues. *GFI*, 265 F.3d at 1272; *see*

*also In re Regents of the Univ. of California*, 101 F.3d 1386, 1390 & n.2 (Fed. Cir. 1996) (applying regional circuit law to the common legal interest or community of interest exception to waiver which is at issue in this case). Thus, the existence of the privilege will be determined by Federal Circuit law while waiver and the community of interest doctrine will be decided by Sixth Circuit law.

### DISCUSSION

The issues the Court must grapple with here are actually quite common in patent litigation. Patents are created by inventors working in conjunction with patent lawyers or agents, often years before the patents end up in litigation. Those patents are often assigned or licensed. During litigation, patent owners and their counsel frequently consult with their related licensees. All of these activities create substantial questions about the existence and waiver of privilege. Accordingly, other courts have faced similar issues on a number of occasions. Where the Courts of Appeals have not spoken, these cases can provide substantial guidance.

MPT has produced two privilege logs. The first privilege log lists documents that relate to the prosecution and maintenance of the '790 and '164 patents. The second privilege log includes emails between MPT, TKG and their joint counsel related to this litigation. With respect to the litigation privilege log, the parties' only dispute is whether the community of interest doctrine allows MPT or its counsel to disclose privileged communications to a nonparty, TKG. The patent prosecution privilege log, on the other hand, creates a number of issues regarding the existence of the privilege. The first concern is whether patent prosecution documents can be protected from disclosure under the work product doctrine. MPT cites a number of cases that it claims support application of work product protection to prosecution documents, while admitting that "to some extent these cases use the phrase 'attorney-client

5

privilege' rather than 'work product' . . . ." The reason MPT's cases do so is because they have nothing to do with work product. For example, in *In re Regents*, the issue was whether "UC and Lilly . . . share the requisite community of interest to allow UC to invoke attorney-client privilege" despite its disclosure of privileged information to Lilly. 101 F.3d at 1389.

The unpublished case cited by MPT actually counsels against allowing work product protection for patent prosecution documents. Just like all other documents, patent prosecution documents are only protected as work product if they are prepared "in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); Fed. R. Civ. P. 26(b)(3). According to MPT's cited case, patent prosecution is only performed in anticipation of litigation "if the primary concern of the attorney is with future litigation rather than the ongoing patent application prosecution. Alternatively, the work product immunity does not apply if the primary concern is with claims raised in the ex parte patent application prosecution." *Conner Peripherals, Inc. v. W. Digital Corp.*, No. C93-20117, 1993 U.S. Dist. LEXIS 20149, * 13 (N.D. Cal. June 7, 1993); *see also Burroughs Welcome Co. v. Barr Labs., Inc.*, 143 F.R.D. 611, 617 (E.D.N.C. 1992); *Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y. 1982). MPT has not presented any evidence that the prosecution documents were prepared with a primary concern to litigation rather than the ongoing patent prosecution. Accordingly, all documents in the prosecution privilege log that are being withheld solely as work product must be produced.[3]

The parties also dispute whether some of the documents designated as falling under the attorney-client privilege are actually entitled to the privilege. Polymeric first challenges the search report, arguing that "[s]earching for prior art and providing a factual report that discusses

---

[3] MPT's email privilege log does not designate any documents as work product.

6

the facts located in a search is not a legal function, *i.e.*, it is not the practice of law." Polymeric notes the following: 1) there was no formal attorney-client agreement with the search firm; 2) the search firm charged less than its normal hourly rate for the search; 3) the search could have been performed by a patent agent[4] rather than a lawyer; and 4) after learning that certain documents were available to the public, an attorney for the search firm stated that he might have redacted less material from the search report.

MPT responds with a number of cases which have found aspects of patent prosecution to be protected by the attorney-client privilege. *See In re Regents*, 101 F.3d at 1391 (holding that "[c]onsultation with counsel during patent prosecution" is protected by the attorney-client privilege); *Conner Peripherals*, 1993 U.S. Dist. LEXIS 20149, at * 14 (applying the attorney-client privilege to documents that reflect "efforts to obtain the strongest permissible patent protection for the invention"). The Federal Circuit has clearly rejected the idea that patent practitioners act as "mere conduits" of technical information. *In re Spalding*, 203 F.3d at 806 & n.3. In *In re Spalding*, the Federal Circuit found that an invention record was protected by the attorney-client privilege "because it requested legal advice concerning the patentability of the invention and served as an aid in completing the patent application." *Id*. at 805. There is no dispute that the redacted material of the search report at issue here contains the same type of information. A representative for the search firm testified that the search report includes the features of the invention (relayed from the prosecuting firm and originating with the client) and a comparison of those features with the cited references. Moreover, a brief review of cases decided by other courts includes a number of instances where a patent search report was

---

[4] A patent agent is a nonlawyer who is certified to participate in patent prosecution proceedings before the PTO.

7

protected by the attorney-client privilege. *E.g.,* Burroughs, 143 F.R.D. at 616; *In re Application of Minebea Co.*, 143 F.R.D. 494, 502-03 (S.D.N.Y. 1992).

The fact that the applicant's patent attorney might employ a patent agent for certain aspects of prosecution is irrelevant. The Supreme Court has held that patent agents engage in the practice of law, *Sperry v. Florida*, 373 U.S. 379, 383 (1963), and that attorneys may employ nonattorneys to assist them without waiving the privilege. *U.S. v. Nobles*, 422 U.S. 225, 238-39 (1975). Drawing from these principles, courts have found that the attorney-client privilege attaches to communications with patent agents. *E.g., Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.RD. 298, 304 (E.D.N.Y. 1992); *Dow Chem. Co. v. Atlantic Richfield Co.*, No. 83-cv-3763, 1985 WL 71991, *133 (E.D. Mich. April 23, 1985). The lack of a formal attorney-client agreement is similarly irrelevant. *See In re Spalding*, 203 F.3d at 806 ("[I]t is not necessary to expressly request confidential legal assistance when that request is implied.").

Polymeric's final argument is that the attorney who redacted the information from the search report has stated that he might have redacted less information had he known that certain documents were disclosed to the PTO. First, Polymeric provides no authority that a nonparty attorney's legal opinion as to what information is privileged is somehow binding on this Court. More importantly, the premise for Polymeric's argument—that the eventual submission of some of the underlying information to the PTO negates the privilege—is incorrect. The Federal Circuit has rejected that reasoning, instead adopting a line of authority that holds as follows:

> The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney. If an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney.

*In re Spalding*, 203 F.3d at 806 (quoting *Knogo Corp. v. United States*, 213 USPQ 936, 940, 1980 WL 39083 (Ct.Cl. Trial Div.1980)).

Accordingly, the search report is covered by the attorney-client privilege.  Polymeric's request to review the redacted portions *in camera* is also denied.  Once the privilege applies, "it is [not] necessary to dissect the document to separately evaluate each of its components.  It is enough that the overall tenor of the document indicates that it is a request for legal advice or services."  *In re Spalding*, 203 F.3d at 806.

Polymeric also challenges patent prosecution communications between the client and nonlawyers.  MPT correctly points out that these nonlawyers are all agents of lawyers whose services were utilized for patent prosecution.  As was discussed above, communications do not lose their privileged status simply because they pass through the hands of a nonlawyer.  *Nobles*, 422 U.S. at 238-39; *see also In re OM Group Sec. Litig.*, 226 F.R.D. 579, 589 (N.D. Ohio 2005) ("Documents created by an accountant at the attorney's request to assist the attorney in providing legal advice to the client are protected by the attorney-client privilege.").  Similarly, lawyers may employ third parties to aid in the patent prosecution process.  *See, e.g., Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,* 707 F.Supp. 1429, 1444 (finding that a nonattorney advisor's communications were privileged).  Similar to the search report, the privilege is not destroyed by the fact that attorney-client information passes between the client, an attorney, and third parties employed by the attorney.

Having established that the attorney-client privilege applies, the next issue is whether the privilege has been waived.  The Court will first address a side issue.  Polymeric argues that TKG and Michael Kennedy were unable to assign their privilege when they assigned the patents.

9

Whether or not this is true, MPT is not attempting to assert TKG or Michael Kennedy's privilege.  Rather, each entity or person has claimed the attorney-client privilege for their own communications and period of ownership.  The real issue is whether the free exchange of these communications between MPT, TKG and Michael Kennedy has waived an otherwise proper assertion of attorney-client privilege.

Polymeric makes two main contentions as to waiver.  First, TKG and Michael Kennedy, the prior owners of the patents or the applications that resulted in the patents, allegedly waived their right to assert the attorney-client privilege for prosecution documents dated before September 18, 1995, when they disclosed those communications to MPT as part of the patent assignment.  Second, during this litigation MPT and its lawyers have disclosed attorney-client communications to TKG.  This disclosure to a nonparty allegedly has waived the privilege.

The general rule holds that the attorney-client privilege is waived by the disclosure of privileged communications to a third party.  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).  Once the privilege is waived, waiver is complete and final as to all parties and for all purposes.  *In re Columbia*, 293 F.3d at 294, 307.  In other words, the Sixth Circuit has rejected the idea that a party can disclose privileged communications to one adversary while maintaining the privilege as to other adversaries.  *Id*. at 302.

An exception to these general waiver principles is the community of interest or common interest doctrine.  *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998).  "The 'common interest' arrangement permits the disclosure of a privileged communication without waiving the privilege, provided the parties have 'an identical legal interest with respect to the subject matter of the communication.'" *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 347 (N.D. Ohio 1999)

10

(quoting *Duplan Corp. v. Deering Milliken*, 397 F. Supp. 1146, 1164 (D.S.C. 1974)).[5]

Courts generally require that the entities asserting the community of interest doctrine have an identical legal interest as opposed to a solely commercial interest. *In re Regents*, 101 F.3d at 1390. Polymeric focuses on this requirement, noting that TKG (a nonexclusive licensee) and Michael Kennedy (a shareholder in MPT and TKG) do not have a right to sue under the patents. *See, e.g., Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1553 (Fed. Cir. 1995) (holding that a nonexclusive licensee does not have the right to sue for patent infringement); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1324-25, 1328 (Fed. Cir. 2001) (holding that a sole shareholder cannot sue for infringement of a patent owned by the company). Polymeric concludes that TKG and Michael Kennedy therefore lack the necessary "identical legal interest" to invoke the community of interest doctrine.

Although Polymeric's argument has a certain surface appeal, courts have not drawn the line between an identical legal interest and a solely commercial interest where Polymeric suggests. Courts within the Sixth Circuit have recognized principles that run counter to Polymeric's suggestion that the identical legal interest must be a right to sue under the patent. First, entities can have a common legal interest even if it is unlikely that they will ever be parties to the same litigation. *Travelers Cas. & Sur. Co. v. Excess Ins. Co. Ltd.*, 197 F.R.D. 601, 607 (S.D. Ohio 2000). In the context of related companies, "disclosure of legal advice to a parent or

---

[5] The *Duplan* case cited by the *Libbey Glass* court is one of a long line of cases in sister courts that have explicitly addressed the common interest doctrine in the patent context. Considering that Sixth Circuit precedent is rather scant and does not diverge from the law of other Circuits, these cases can be instructive to the extent other courts have addressed similar factual circumstances.

affiliated corporation does not work a waiver of the confidentiality of the document, because of the complete community of interest between parent and subsidiary." *The Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 473 (W.D. Mich. 1997) (*citing Crabb v. KFC Nat'l Mgmt.*, No. 91-5474, 1992 U.S. App. LEXIS 38268, *2 (6th Cir. Jan. 6, 1992)).  Finally, in one case the key factor in finding a common interest was a clear indication that the parties exchanging the information intended the communications to remain confidential as to others.  *Libby Glass*, 197 F.R.D. at 348.  All three of these principles would seem to apply to the MPT-TKG-Michael Kennedy relationship.

Indeed, parties can have common legal interests outside of the litigation context altogether.  Numerous courts, including the Federal Circuit, have found that a patent purchaser and a licensee or inventor have a common interest in successfully prosecuting patent applications.  *In re Regents*, 101 F.3d at 1390-91; *Constar Int'l, Inc. v. Continental Pet Techs., Inc.*, No. 99-234-JJF, 2003 U.S. Dist. LEXIS 21132, *5-6 (D. Del. Nov. 19, 2003); *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, No. 84 C 5103, 1987 U.S. Dist. LEXIS 10300, *3-4 (N.D. Ill. June 19, 1987).  Licensees and patent owners have also been found to have a common legal interest in litigation.  *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D. Ill. 2000); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95 C 0673, 1996 U.S. Dist. LEXIS 19274, *5, 17-18 (N.D. Ill. Dec. 9, 1996); *13-14.  However, adversarial aspects of the relationship such as license negotiations are not protected.[6]

---

[6] The Court notes that it appears from deposition testimony submitted with previous motions that defendants were allowed to explore this aspect of the relationship between TKG and MPT. Under a more lenient application of the common interest doctrine applied in some jurisdictions, even disclosures made during

*Heidelberg*, 1996 U.S. Dist. LEXIS 19274 at * 5.

There must be more to the relationship than a bare nonexclusive license. *Katz v. AT&T Corp.*, 191 F.R.D. 433, 437 & n.4 (E.D. Pa. 2000). In *In re Regents*, the district court had rejected the common interest doctrine because the license was nonexclusive. 101 F.3d at 1390. However, the Federal Circuit noted that the license "had the potential to become" exclusive. *Id*. In this sense, the licensee was "more than a non-exclusive licensee, and shared the interest that UC would obtain valid and enforceable patents." *Id*. Just because this would also create a financial benefit for the parties did not destroy the character of their common legal interests. *Id*.

Similarly, the license at issue here is much more than a bare nonexclusive license. First, the Sixth Circuit, whose law governs these issues, has held that affiliated entities are entitled to invoke the community of interest doctrine. *Crabb*, 1992 U.S. App. LEXIS 38268, at * 8; *see also Jandernoa*, 173 F.R.D. at 473. Second, at the behest of Polymeric the Court has already recognized not only that MPT and TKG are closely affiliated but that the relationship between the two reaches far beyond that of a typical nonexclusive licensee. The Court granted Polymeric's motion to compel damage documents, based in large part on Polymeric's argument and evidence that MPT and TKG do not have an arms-length licensing relationship, and that the interest of the two entities in this litigation is nearly identical. Third, although TKG's license is nominally classified as nonexclusive, the Court has not seen any evidence that TKG does not enjoy the lion's share of the benefits of the patent as a result of its relationship with MPT. In

---

adversarial license negotiations are protected from waiver. *E.g.*, *Britesmile, Inc. v. Discus Dental Inc.*, No. C 02-3220, 2004 U.S. Dist. LEXIS 20023, *9 (N.D. Cal. Aug. 10, 2004); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 311 (N.D. Cal. 1987).

sum, although this license may fall below the threshold that would allow TKG or Michael Kennedy to sue on their own behalf, the relationship far exceeds the solely financial interests of a mere nonexclusive licensee.  At the time of the patent assignment, all three had an identical legal interest in successfully prosecuting the patents.  In litigation, all three have an identical legal interest in the enforcement and validity of the patents.  Accordingly, the community of interest doctrine applies to TKG, MPT and Michael Kennedy.

In light of the Court's conclusion that all prosecution documents withheld on work product grounds must be produced, there are some points that need clarification.  MPT has pointed out that item 31 from the '119 application and items 51 and 52 of the '790 patent were originally labeled as work product but contain some attorney-client communications.  Those documents are to be produced with the attorney-client communications redacted.  MPT has also represented that communications with a draftsperson should have been labeled as work product.  Accordingly, those documents must be produced.

Finally, Polymeric asks the Court to review all of the remaining documents *in camera*.  However, other than the very limited instances of mislabeling discussed above, Polymeric has not provided the Court with any reason to doubt the veracity of MPT's claims of attorney-client privilege.  The Court will not review the attorney-client documents *in camera*.

**CONCLUSION**

The Court GRANTS Polymeric's motions in part and DENIES Polymeric's motions in part.  The Court ORDERS MPT to produce the following documents:

'119 Application: 1, 9, 19, 20, 31 (redacted), 33, 52, 53, 55.
'858 Patent: 1, 4, 6, 13, 22, 37, 38, 43, 59, 65.

'164 Reissue: 1, 12, 40, 41, 44, 57.
'790 Patent: 1, 4, 13, 21, 22, 23, 26, 35, 51 (redacted), 52 (redacted), 54.

IT IS SO ORDERED.


   /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  2/9/06