**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MPT, Inc.** ) | **CASE NO. 1:04-cv-2357** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **Vs.** ) | |
| ) | |
| **Marathon Labels, Inc., and** ) | |
| **Polymeric Converting, LLC** ) | **Memorandum of Opinion and Order** |
| ) | |
| **Defendants.** ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion for Partial Summary Judgment of Infringement (Doc. 144). Plaintiff MPT, Inc. ("MPT") seeks partial summary judgment that Marathon Labels, Inc. and Polymeric Converting LLC (collectively "Defendants")[1] have infringed certain claims of U.S. Patent No. 5,417,790 (issued May 23, 1995) (the "'790 patent") and U.S. Patent No. RE 37,164 E (issued May 8, 2001) (the "'164 patent").[2] For the following

---

[1] Marathon Durable Labeling Systems ("MDLS") was also a party when this motion was filed. All claims between MDLS and MPT have since been dismissed. (Doc. 154).

[2] Three other motions were filed. Defendants' Motion for Summary Judgment of Invalidity (Doc. 142) is pending and a separate opinion will be issued. Two other Motions (Doc. 140 & 141) have been dismissed as moot. (Doc. 154).

reasons, Plaintiff's Motion is DENIED.

**FACTS**

MPT alleges that Defendants infringe Claims 1, 2, 3, 4 and 6 of the '790 patent and Claim 1 of the '164 patent. All of the claims at issue are method claims. In general, the claims protect a method of labeling and relabeling reusable containers. A placard typically has an adhesive coated face covered by a liner. The liner is removed and the placard is substantially permanently attached to a container or object with the adhesive. The placard also has a release coated face opposite the adhesive coated face. The release coating receives a pressure sensitive adhesive label which may correspond to the contents of the container. The release coating allows the label to be removed such that a new label can be placed on the placard when the contents of the container change.

Marathon manufactures a device called the "Smart Surface™ Placard."[3] Although the parties dispute whether Marathon's device can infringe the patented method, they do not dispute the structure of that device. It includes a liner over an adhesive coating that can be used to attach to a container. The adhesive coating is in contact with a first layer of polyester. The first polyester layer has a top coat that may have printing. Another layer of adhesive attaches a second layer of polyester to the opposite side of the top coat. A Teflon® film is attached to the second polyester layer with adhesive. The Teflon® layer allows for the attachment and removal of pressure sensitive adhesive labels. Polymeric manufactures the Teflon® layer.

MPT alleges that Marathon's customers use the Smart Surface™ Placard to practice the

---

[3] "Placard" is a term that was defined during claim construction. For clarity, the Court will refer to Marathon's product as the Smart Surface™ Placard.

claimed method and are therefore direct infringers. Marathon is alleged to contribute to this infringement by selling the Smart Surface™ Placard for use in the method. MPT alleges that Marathon induces infringement by marketing the placard for use in the method and by being the co-owner of a patent that teaches the use of the Smart Surface™ Placard in the method. Polymeric is alleged to induce infringement by having designed the Smart Surface™ Placard with the intent to infringe the patents, by supplying Teflon® for use in the Smart Surface™ Placard and by virtue of its co-ownership of a patent that teaches the use of the Smart Surface™ Placard in the method.

Defendants present two lines of defense. First, they dispute that their customers are direct infringers. They argue that the claim limitations of "substantially permanent" attachment and a "release coating" of a "placard" are not met by the users of the Smart Surface™ Placard. Second, Defendants argue that they cannot be liable for inducement or contributory infringement even if their customers infringe the patents.

**STANDARD OF REVIEW**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. UAW Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

> together with the affidavits, if any," which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

"[I]n deciding a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## **DISCUSSION**

MPT alleges that Marathon and Polymeric induce others to infringe and that Marathon is a contributory infringer.  "Although not directly infringing, a party may still be liable for inducement or contributory infringement of a method claim under 35 U.S.C. §§ 271(b), (c) if it sells infringing devices to customers who use them in a way that directly infringes the method claim."  *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).  A finding of direct infringement by users of the Smart Surface$^{TM}$ Placard is a prerequisite to a finding of inducement or contributory infringement.  *Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 774

(Fed. Cir. 1993).

Marathon's customers do not infringe unless they perform every element or limitation of the method claim at issue.  *Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1297 (Fed. Cir. 2005).  Defendants focus on two limitations of the '790 and '164 patents.  First, Defendants argue that users of the Smart Surface™ Placard do not "substantially permanently" attach that device to containers.  Second, Defendants argue that the Smart Surface™ Placard does not have a "release coating" on the "placard" as those terms were defined in the Court's claim construction order.

Substantially Permanently

All of the claims at issue invoke the concept of "substantially permanently" attaching or affixing a placard to an object or container:

('790 patent, Claim 1):

c) substantially permanently attaching the placard to the object by adhering said placard to said container using said adhesive coated face;

('790 patent, Claim 4):

a) substantially permanently affixing a placard to the container with a release coated face oriented outwardly by pressing a pressure sensitive placard adhesive layer against the container;

('790 patent, Claim 6):

a) substantially permanently affixing a placard to one such structure with a release coated surface of the placard oriented outwardly;

('164 patent, Claim 1):

a) substantially permanently affixing a placard to one such object with a release coated surface of the placard oriented outwardly;

The parties did not ask the Court to construe substantially permanently.  They did,

5

however, address the meaning of permanently.  Plaintiff advocated that "'Permanently' means capable of continuing or enduring through multiple cycles of labeling and relabeling of the container."  Defendants countered that "'Permanently' means affixed to an 'object' or 'container' such that a placard permanently attached or affixed to the substrate cannot be removed without damaging the placard or the 'object' or 'container.'"

The Court adopted Defendants' definition.  The patent specifications' only mention of permanent was with respect to the adhesive of the labels that attach to the release coated face of the placard.  MPT's president provided the patent office with a definition of a permanent adhesive as "[a]n adhesive designed to stick to a substrate without edge lifting that cannot be removed without damaging either the label or the substrate" and a removable adhesive as "[a]n adhesive designed to stick to a substrate without edge lifting that can be removed without damage to either the label or the substrate."  MPT argued that these definitions were inapplicable to the claims, since the permanent adhesive is only mentioned with respect to the labels.  The Court disagreed.  In some of the claims at issue the placard is substantially permanently attached to a container or object with an adhesive and the specification describes attaching the placard with an adhesive.

MPT presents the following evidence that Marathon's Smart Surface™ Placard utilizes a permanent adhesive.  Marathon's 30(b)(6) deponent Hurley testified that the Smart Surface™ Placard is affixed to a reusable container with "a permanent bond" and that the adhesive used is "a permanent pressure sensitive adhesive."  MPT has provided specification sheets for the adhesive used by Marathon.  These explain that the adhesive is used for "durable goods labeling" and "[o]ffers strong permanent bonding to a wide variety of substrates including high surface

energy (HSE), low surface energy (LSE) and powder coat substrates."

Defendants counter with the affidavit of Marathon's 30(b)(6) deponent Hurley which explains his earlier description of Marathon's products as having a permanent bond as follows:

> A "permanent bond," as I understand it in the labeling industry, means when the item in question, in this case my, SMART SURFACE$^{TM}$ PLACARD is affixed, it will not slip, slide or fall off the substrate.

MPT replies that the Court should not consider the Hurley affidavit. He previously testified that the adhesive of the Smart Surface$^{TM}$ Placard can create a "permanent bond" using a "permanent pressure sensitive adhesive." He now states in an affidavit that by permanent bond he meant "it will not slip, slide or fall off the substrate." MPT is correct. A permanent adhesive is one that will form a permanent bond in many applications. Hurley's affidavit essentially adopts the definition of a removable adhesive that never forms a permanent bond. The Court finds that the affidavit carries no evidentiary weight because it directly contradicts his previous deposition testimony. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 2006 U.S. App. LEXIS 12601, *26 (6th Cir. May 23, 2006).[4]

MPT also points to U.S. Patent No. 6,667,086 (issued Dec. 23, 2003) (the "'086 patent"). The patent was originally assigned to Polymeric and claims the use of Teflon® in labeling

---

[4] Even if this affidavit were not directly contradictory, the Court finds that it "constitutes an attempt to create a sham fact issue." *Aerel, S.R.L.*, 2006 U.S. App. LEXIS 12601 at *27. The Court must consider "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Id*. (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). None of these factors works in Hurley's favor here.

applications. The '086 patent specification describes a comparison test between that invention, the '790 patent and U.S. Patent No. 5,628,858 (issued May 13, 1997) (the "'858 patent").[5] The comparison test is related to the release surfaces of the products. However, it does discuss the various inventions as being used for the same purpose and incorporates the '790 and '858 patents by reference. The Summary of the Invention and Claim 11 of the '086 patent then describe "substantially permanently attaching the support structure to the object by adhering the laminated support structure to the object using the adhesive coated face . . . ." These are the only instances where substantially permanent attachment is mentioned in the '086 patent.

Defendants fault MPT's reference to the '086 patent's use of "substantially permanently." They note that the '086 application was filed on August 24, 2001 and issued on December 23, 2003—well after the substantially permanently language was added to the applications for the '790 and '164 patents. As evidence that the definition may have changed over time, Defendants submit the testimony of Michael Kennedy of MPT. When asked whether he agreed with a definition of permanent as unable to "be removed without damaging either the label or the substrate" he responded that "I wouldn't necessarily agree with that definition today."

Although Defendants contend that the definition of substantially permanently changed between the time of the MPT patents and its '086 patent, the '086 patent itself compels the opposite conclusion. The word permanent appears relatively few times in the '086 patent and every instance appears to relate to the '790 and '164 patents through incorporation or the use of the same or similar language. Moreover, MPT notes that a 2004 reference relied upon by

---

[5] The '858 patent eventually reissued as the '164 patent.

Defendants during *Markman* briefing has a definition similar to that submitted by MPT during prosecution of its patents.

The Court concludes that the Hurley testimony, adhesive specifications and the '086 patent all support a finding that the Smart Surface™ Placard has a permanent adhesive such that it is *capable* of substantially permanent attachment.  However, this does not resolve the infringement issue.  MPT's patents are in the form of method claims, not apparatus claims.  In other words, MPT does not have an exclusive right to make, sell and use placards with substantially permanent adhesives.  Rather, it is only an infringement if someone actually substantially permanently attaches the Smart Surface™ Placard to a substrate while performing the method.

MPT has failed to prove that Marathon's customers substantially permanently attach the Smart Surface™ Placard to perform the patented method.  MPT has not provided a single test of the Smart Surface™ Placard on any surface, let alone the actual surfaces used by Marathon's customers.  This omission is critical because industry sources are clear that the actual strength of an adhesive bond also depends on variables such as the substrate material, length of time it is applied and the environment that the adhesive is exposed to during use.  MPT's president Michael Kennedy testified similarly:

> Each suppler will identify to us what they consider a permanent.  Again, they'll qualify all the statements with please test for your end use.  So I could buy what is quote, unquote, termed a permanent today, put it onto a package but still be able to remove it after a certain period of time.  A lot of it has to do with how long you put it on, the dwell time, the type of environment and the substrate.

The only tests of substantially permanent attachment[6] to actual objects were provided by Defendants.  Although MPT's lack of evidence as to how Marathon's customers actually attach the Smart Surface™ Placards precludes summary judgment, the Court will discuss each test briefly.

The first was conducted by Defendants' expert Stempel.  Stempel placed placards on his refrigerator, his floor and a Tupperware container in his home.  He waited 10-20 minutes and attempted to remove each and entered the results on a handwritten 3x2 matrix.  All of the applications resulted in "Easy Removal" and "No Distortion."

A second test was conducted by Legal-Eze Litigation Consulting and was provided to the Court on a DVD.  The individuals performing the test used a commercially available Sterilite® container as the substrate.  Six products—four made by Marathon, one of a type sold by MPT and a prototype identified as "Teflon® surface placard with removable adhesive on back surface"—were placed on the container by hand.  After approximately five minutes each was removed using a razor-edge tool.  According to the individuals conducting the test, the products were not damaged and only one of the samples left any adhesive residue on the container.  This residue was removed with acetone and a paper towel.  The testers indicated that there was no damage to the container.

---

[6] MPT notes that the claims of the '790 and '164 patents refer to *substantially* permanently attaching or affixing the placard.  The Court agrees that substantially is a term of magnitude or degree.  *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys.*, 347 F.3d 1314, 1322-23 (Fed. Cir. 2003).  However, even if substantially permanently does not require damage to every placard, MPT has failed to provide any evidence that Marathon's customers attach placards in this manner.

10

MPT is correct that the Stempel test was haphazard at best and is entitled to no evidentiary weight. Stempel tested the placards in his home. He attached them to his refrigerator, his floor and a piece of Tupperware without explaining how any of these surfaces are relevant to the containers used by Marathon's customers. He did not prepare the surfaces in a scientific manner and did not know the refrigerator material or the type of coating on the floor. He did not standardize the force used to attach the placards or the time between placement and removal. Time is critical because some adhesive bonds strengthen over time.

The only controlled test of substantially permanent attachment was the DVD test submitted by Defendants. Having reviewed the test, the Court generally agrees with the Defendants' characterization of the results. The samples were firmly placed on the Sterilite® container and easily removed with the assistance of a removal tool. One of the samples left behind a minimal amount of adhesive while the rest were removed totally intact without any visible damage.[7] In short, a reasonable juror could conclude that the samples in the test were not substantially permanently attached.

MPT's expert Prahl disputes whether the test represents actual conditions.[8] First, he challenges the choice of the container as "a special case chosen because of its non-absorbing

---

[7] Prahl believes that three of the test samples were stretched. Although the Court agrees that stretching may evidence damage to the placard, it concludes that reasonable jurors could find that the placards were not stretched.

[8] Defendants have filed a motion to strike Prahl's analysis of the test. The Court finds that the Prahl analysis is within the scope of his initial expert report and any arguments inconsistent with the Court's *Markman* Order have been rejected. However, the Court does agree that Defendants are entitled to depose Prahl regarding his analysis of the test. A separate Order will be issued.

11

characteristics." Second, he argues that the condition of the substrate was not established prior to the test. Third, Prahl believes that the placards were applied with very little pressure. Fourth, Prahl argues that the 5 minute dwell time was inadequate. Fifth, Prahl believes that the testing for adhesive residue was faulty. Sixth, Prahl takes issue with the fact that the test only addressed a single removal situation of peeling.[9]

Some of Prahl's concerns may be valid. However, his observations actually highlight the problem with MPT's infringement argument. The mere presence of a permanent adhesive on the Smart Surface™ Placard cannot satisfy the substantially permanent attachment claim limitation. The Court has no evidence that the permanent adhesive would actually substantially permanently attach in Marathon's customers' particular applications, or of the substrates or environments in which the Smart Surface™ Placard is used. Accordingly, the Court concludes that MPT has not met its burden of proving that Marathon's customers substantially permanently attach Marathon's products to containers. Accordingly, there can be no direct infringement and summary judgment must be denied.

Placard

The term placard appears in all of the asserted claims and is first described in the independent claims as follows:

('790 patent, Claim 1):

a) providing a placard for supporting pressure-sensitive adhesive-backed labels, said placard having a release coated face and an adhesive coated face, and a liner covering said adhesive coating;

---

[9] MPT also argues that the test was akin to an expert report because the tester announced conclusions. However, the individuals conducting the test were merely conveying factual information that was also visible on the DVD.

12

('790 patent, Claim 4):

a) substantially permanently affixing a placard to the container with a release coated face oriented outwardly by pressing a pressure sensitive placard adhesive layer against the container;

('790 patent, Claim 6):

a) substantially permanently affixing a placard to one such structure with a release coated surface of the placard oriented outwardly;

('164 patent, Claim 1):

a) substantially permanently affixing a placard to one such object with a release coated surface of the placard oriented outwardly;

The Court's claim construction order defined a placard as "a structure adapted for supporting a pressure sensitive adhesive backed label." Defendants had sought for the definition to include an adhesive coating and a release coated face. The Court declined to include these in the definition because the surface or face of the placard is defined within each claim.

Defendants noninfringement argument focuses on the release coating or release coated face of the placard. They posit that the placard claim limitation is embodied by the adhesively bonded layers of polyester of the Smart Surface™ Placard. Because all of the claims further define a placard as having a release coated face or surface, they argue that the face or surface of the polyester layer opposite the adhesive coated face must have a release coating to infringe. Noting that the Teflon® film attaches to the polyester layer with an adhesive, they conclude that the Smart Surface™ Placard in fact has two adhesive coated faces. In other words, because an adhesive layer is interposed between the placard (as defined by Defendants) and the Teflon® layer, the placard cannot have a release coating or release coated face.

The Court agrees that the placard does not include the release coating. During claim

13

construction the Court essentially adopted MPT's suggestion that a coating is a covering.  The placard has a release coated *face* in all of the claims at issue and an adhesive coated *face* in Claims 1-4 of the '790 patent.  Although a placard is not limited to the specific film described in the specifications,[10] a placard with faces that are covered simply cannot also include the coverings.

MPT next argues that even under Defendants' definition of placard the Teflon® of the Marathon product covers the placard as required by the Court's definition of release coating.  The Court concludes that MPT has not met its burden of proving that the Teflon® covers the second polyester layer.  MPT has not provided any evidence regarding the nature of the adhesive layer interposed between the placard and the Teflon® coating.  Although the Court agrees that the mere presence of some adhesive to attach the Teflon® to the placard face does not preclude a finding that the Teflon® coats the placard, MPT cannot meet its burden on summary judgment without some evidence of the nature of that adhesive.

Conclusion–Direct Infringement

The Court finds that there are genuine issues of material fact as to whether Marathon's customers "substantially permanently" attach Marathon's products to containers and whether the "placard" of Marathon's  Smart Surface™ Placard has a "release coating."  Accordingly, the Court concludes that MPT has not met its burden of proving infringement.

---

[10] MPT argues that the Court's claim construction of a placard as "a structure adapted for supporting a pressure sensitive adhesive backed label" supports its position that the placard is a unitary item that includes the coating.  However, MPT's center film or Marathon's polyester layers could also meet this definition since these pieces provide support for the label.

14

Inducement and Contributory Infringement

Both inducement and contributory infringement require direct infringement by another. Because MPT has not met its burden as to direct infringement it has also failed to demonstrate inducement and contributory infringement.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion is DENIED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  7/14/06