**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MPT, Inc.** ) | **CASE NO. 1:04-cv-2357** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **Vs.** ) | |
| ) | |
| **Marathon Labels, Inc., and** ) | |
| **Polymeric Converting, LLC** ) | **Memorandum of Opinion and Order** |
| ) | |
| **Defendants.** ) | |

## INTRODUCTION

This matter is before the Court upon the Motion of Defendants for Summary Judgment of Invalidity (35 U.S.C. § 112, ¶ 1) (Doc. 142). Plaintiff MPT, Inc. ("MPT") alleges that Marathon Labels, Inc. and Polymeric Converting LLC (collectively "Defendants")[1] have infringed certain claims of U.S. Patent No. 5,417,790 (issued May 23, 1995) (the "'790 patent") and U.S. Patent No. RE 37,164 E (issued May 8, 2001) (the "'164 patent"). Defendants seek summary judgment

---

[1] Marathon Durable Labeling Systems LLC ("MDLS") was also a party when this motion was filed. All claims between MDLS and MPT have since been dismissed. (Doc. 154).

that those claims are invalid pursuant to 35 U.S.C. § 112, ¶ 1.[2] For the following reasons, Defendants' Motion is DENIED.

**FACTS**

Defendants argue that claim terms added during prosecution of the '790 and '164 patents are not properly supported by the original application as required by 35 U.S.C. § 112, paragraph 1. The specific terms at issue are "substantially permanently," "first contents set," "second contents set," "first product," "second product," "another product," "first product set," "second product set" and other variations of these terms. All of the claims require that a placard is substantially permanently attached or affixed to an object or container. All but claims 1-3 of the '790 patent and all claims of the '164 patent involve some sort of product, product set or contents set. Example claims with some of the relevant language underlined are reproduced below:

('790 Patent):

4. A method of using a reusable container for products comprising:

> a) <u>substantially permanently affixing</u> a placard to the container with a release coated face oriented outwardly by pressing a pressure sensitive placard adhesive layer against the container;
>
> b) inserting a <u>first product</u> into the container;
>
> c) at a selected one of a time prior to and a time subsequent to the <u>first product</u> insertion step, adhering a pressure sensitive adhesive coating of a first label bearing <u>first product</u> information to the release coating of the placard;

---

[2] Three other motions were also filed. MPT's Motion for Summary Judgment of Infringement (Doc. 144) is pending and will be addressed in a separate order for clarity. Two other motions (Doc. 140 & 141) have been dismissed as moot. (Doc. 154).

        d) removing the <u>first product</u> from the container;

        e) inserting <u>another product</u> into the container; and,

        f) at a selected one of a time prior to or subsequent to the <u>another product</u> insertion step, removing the first label while leaving the placard affixed to the container and thereafter adhering a pressure sensitive adhesive coating of a second label bearing <u>second product</u> information to the release coating of the placard.

('164 Patent):

1. A process for providing identifying information as to the contents of an object on such an object, the process comprising:

        a<u>) substantially permanently affixing</u> a placard to one such object with a release coated surface of the placard oriented outwardly;

        b) providing a first label bearing information related to a <u>first set of object contents</u>;

        c) applying the first label to the placard by securing a pressure sensitive adhesive coating of the first label to the placard release coating;

        d) at a selected one of a time prior to and a time subsequent to the first label applying step positioning a <u>first contents set</u> in the object;

        e) removing the <u>first contents set</u> from the object and replacing it with a second contents set; and,

        f) at a selected one of a time prior to and subsequent to the <u>first set</u> removal step removing the first label from the placard while leaving the placard affixed to the object and applying to the release coated surface of the placard a pressure sensitive surface of a second label bearing information related to <u>contents of the second set</u>.

'790 patent, Claim 4; '164 patent, Claim 1.

      The terms at issue were incorporated into the claims as follows.  None of the terms were in the claims of the original patent application No. 07/955,119 (the "'119 application").  The '119 application was abandoned in favor of continuation-in-part application No. 08/292,882 (the

"'882 application"). Again, none of the terms at issue were recited in the original claims of the '882 application. Substantially permanently and many of the products-related terms (e.g., first product, second product) were added during prosecution of the '882 application, which eventually issued as the '790 patent. The '882 application was also continued as continuation application No. 08/443,202 (the "'202 application"). The remaining terms at issue from the '164 patent (substantially permanently and contents-related terms) were added during prosecution of the '202 application. The '202 application matured into U.S. Patent No. 5,628,858, which eventually reissued as the '164 patent.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to the presumption of validity of 35 U.S.C. § 282, a party challenging an issued patent's validity must provide clear and convincing evidence that the patent is invalid. *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (applying the clear and convincing standard to a written description challenge). "[I]n deciding a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### DISCUSSION

Defendants argue that the '790 and '164 patents are invalid because the amended claims

fail to comply with 35 U.S.C. § 112, first paragraph, which states as follows:

> The specification shall contain a *written description* of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to *enable* any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the *best mode* contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112, ¶ 1 (emphasis added).

This paragraph embodies three distinct requirements of written description, enablement and best mode. *Univ. of Rochester*, 358 F.3d at 921. At issue here is the written description requirement. As applied to this case, this means that the language of the later-amended claims must find appropriate support in the original specification of the '882 application.[3] That specification must include sufficient information to show that the inventor possessed the later-claimed invention at the time of the original disclosure.[4] *Pandrol USA, LP v. Airboss Railway Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005). "The purpose of the written description

---

[3] As MPT notes, the written description requirement is currently a "hot topic" in the Federal Circuit, as expressed in a number of dissents from refusals to review the issue *en banc*. *E.g., Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 433 F.3d 1373 (Fed. Cir. 2006); *Univ. of Rochester v. G.D. Searle & Co.*, 375 F.3d 1303 (Fed. Cir. 2004). These dissents focus on two main issues. First, a recent line of cases applies the written description requirement to original claims in addition to later-amended claims. Second, some judges argue that a heightened standard has been applied to biotechnology inventions. Neither of these complications appear here. This is a classic case of alleged new matter in later-amended claims, an issue courts have been addressing at least since *In re Ruschig*, 379 F.2d 990 (C.C.P.A. 1967).

[4] The parties do not dispute that the specification being considered is the specification submitted with the '882 continuation-in-part application. Nor do they dispute that the specific claim language at issue was added after the '882 application was filed.

5

requirement is to prevent an applicant from later asserting that he invented that which he did not; the applicant for a patent is therefore required to 'recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.'" *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991)).

Although generally stated as the "possession" test, a showing of actual possession at the time of the original disclosure is not enough; rather, "the written description requirement is satisfied by the patentee's disclosure of 'such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention.'" *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir. 2002) (quoting *Lockwood v. American Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). In other words, the purpose of the test is to demonstrate possession of the claimed invention and possession is proved by full disclosure of what is claimed.[5] *Enzo*, 323 F.3d at 969. "The possession test requires assessment from the viewpoint

---

[5] MPT occasionally describes the written description test as whether "one skilled in the art would recognize what is claimed." Defendants are correct that this shorthand definition is not accurate. It is possible to recognize what is claimed without recognizing from the original specification that the inventor possessed what is claimed:

> The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.

*Turbocare v. Gen. Elec. Corp.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001) (quoting *Lockwood,* 107 F.3d at 1572).

of one of skill in the art."[6] *Pandrol*, 424 F.3d at 1165.

          Substantially Permanently

The words substantially permanently do not appear in the specification. However, the claimed subject matter need not be stated *in haec verba*. *Univ. of Rochester*, 358 F.3d at 923. MPT points to excerpts from the patents as providing a written description of substantially permanently attaching a placard. "The . . . placard 12 is applied to a container such that the adhesive 26 secures the placard 12 firmly to the container 28 . . . ." The specification also describes a "permanent pressure sensitive adhesive" of a label as providing a strong bond that will "rip or tear" when removed.

In many of the claims at issue, the placard is substantially permanently attached to a container with a pressure sensitive adhesive. On Defendants' suggestion,[7] the Court referred to industry definitions of a permanent adhesive known to those of ordinary skill in the art in formulating its claim construction of permanently[8] as "affixed to an 'object' or 'container' such

---

[6]    Defendants are correct that the test is not whether a person of ordinary skill in the art would understand what is meant by the claims. However, as the quoted language states, whether the specification provides an adequate description to demonstrate possession of the claimed subject matter is determined from the perspective of one of ordinary skill in the art.

[7]    Defendants argued the following: "The specification does not use the term with respect to placards. However it refers to labels having 'so-called' permanent adhesive backing that attach to the release coating of the placard. . . .  The use of the phrase 'so-called' indicates that the term 'permanent' should be given its meaning in the art. . . . [T]he meaning of the term in the art of labeling supports Defendants' definition."

[8]    The parties did not seek claim construction for "substantially permanently."

7

that a placard permanently attached or affixed to the substrate cannot be removed without damaging the placard or the 'object' or 'container.'" Accordingly, MPT posits that its possession of the concept of substantially permanently affixing a placard is proved by the specification's recitation of "securely" or "firmly" attaching the placard using an adhesive and of "permanent" adhesives, combined with the knowledge of the properties of those adhesives in the art.

Defendants argue that the cited specification language does not support MPT's later inclusion of substantially permanently in the claims. First, the specification only refers to a permanent adhesive with respect to the labels that are placed on the release coated face of the placard. Second, Defendants argue that the words securely or firmly do not describe the concept of substantially permanently attaching the placard.[9] Third, the fact that adhesive is used to attach the placard to a container does not explain whether the placard adhesive is permanent or removable. In sum, "[b]ecause there is no mention of permanent, temporary or removable attachment of the placard to an object or a container or of any technique or conditions by which the placard is to be attached in the specifications, Defendants are entitled to summary judgment that the patents-in-suit are invalid under 35 U.S.C. § 112, first paragraph, on their face."

MPT believes that Defendants are improperly attempting a word-to-word comparison between the original specification and the claim language. It argues that a person of ordinary skill in the art would understand from the specification that it possessed and described substantially permanently. For example, a specific example may provide a written description

---

[9] Defendants also discuss language from the abstract and a description of the placard as reusable. Because MPT has not relied on this language, the Court need not discuss it in detail.

for broader claim language as long as the equivalence is recognized in the art.  *See In re Smythe*, 480 F.2d 1376, 1384 (C.C.P.A. 1973) (explaining that a specification of a one-pound "lead weight" counterbalance could support a one-pound "weight," "metal weight," or even an "obviously art-recognized, 'weight' as a pound of feathers").  Similarly, a broad specification can support narrower claims.  *See Union Oil Co. v. Atlantic Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000).  However, "generalized language may not suffice if it does not convey the detailed identity of an invention."  *Univ. of Rochester*, 358 F.3d at 923.  Again, this is based in part on the level of ordinary skill in the relevant art.  *See id*. (explaining that "in the nineteenth century, use of the word 'automobile' would not have sufficed to describe a newly invented automobile; an inventor would need to describe what an automobile is, viz., a chassis, an engine, seats, wheels on axles, etc.").

In addition to the specification, the parties have presented other evidence related to the written description issue:

- On the one hand, MPT's expert Prahl testified that substituting substantially permanently for firmly would not "have changed anything."  On the other hand, Defendants point out that Prahl recognized differences between the two terms and also referred to substantially permanently as vague.

- MPT claims support for its position in the testimony of Defendants' expert Stempel.  He essentially testified that substantially permanently has a meaning in line with that adopted by the Court.  Defendants correctly point out that the issue is not whether Stempel (or a person of ordinary skill in the art) understands the claims, but whether possession of the subject matter of the claims is demonstrated by the specification.  The cited testimony does not link the specification to the claims and thus does not address this issue.

- The parties also dispute why the claim language at issue was added during prosecution.  Defendants argue that the reason was to avoid prior art.  MPT argues that it was merely clarifying the claim language.

- The parties have presented conflicting evidence as to whether it is appropriate to use the reference to the permanent adhesive of the label as providing a written description for

9

substantially permanently.  MPT presents an industry catalog that recommends using permanent adhesive for applications involving permanent attachment.  Defendants counter with the testimony of Michael Kennedy of MPT.  In that testimony he recognized that adhesives classified as either permanent or removable do not always exhibit those properties in particular applications.  Defendants also provide a video that they believe demonstrates that "placards made with removable adhesives allow firm and secure attachment."

After considering the specification and other evidence in the light most favorable to MPT, it is apparent that reasonable jurors could conclude that Defendants have not provided clear and convincing evidence that the patent claims are invalid for a lack of written description.  The specification references firmly securing the placard to the container with an adhesive.  A number of the claims include substantially permanently attach the placard using an adhesive.  A permanent adhesive is recognized in the specification as a type of adhesive and as noted in the Court's *Markman* order the properties of a permanent adhesive are known to one of ordinary skill in the art.

In sum, the evidence is at best inconclusive.  It is not necessary to describe substantially permanently *in haec verba* or for the language from the specification to have the exact same scope as the claim language.  Accordingly, while the testimony and other evidence arguably demonstrate differences between terms such as firmly and substantially permanently, the Court finds that those differences are inadequate for Defendants to meet their burden on summary judgment.

### Contents, Product, Products Set and Variants

MPT generally argues that the entire purpose of the patent is to provide a system for changing labels of a reusable container when its contents change.  The title of both patents is "Label systems for reusable containers and the like."  MPT has provided a dictionary definition

10

that describes "content" as "something contained" and a "container" as something "that contains." MPT posits that this is in line with the Court's definition of a container as "a receptacle for holding items."

MPT also refers the Court to language in the "Background of the Invention" sections of the specifications that describes the prior art that the patents are intended to improve upon as follows:

> Reusable containers often require a labeling system to identify the contents and status of each container.  The label provides information such as the origin and destination of the contents, batch number, part number, serial number, quantity, and description.
>
> In one proposed labeling system, a transparent envelope is secured to the container.  A label is placed inside the envelope where it can be viewed.  When the status of the container changes such as when its content is changed, a new label is substituted in the envelope.

With respect to this passage, MPT points out that in his supplemental expert report Defendants' expert Stempel explained that "the '790 patent and the '164 patent, at col. 1, acknowledges that it was well known in the labeling art to use reusable containers with labels that are changed when the contents of the containers are changed."

MPT argues that its improved labeling method was to be used in the same application. In other words, under MPT's patents the ultimate use of the reusable containers to hold contents that are changed, added and replaced remains the same. MPT's improvement was in the method of labeling the containers to indicate those changing contents.

Defendants respond that "the lengthy limitations" do not appear in the specification. In this regard, Plaintiff's expert Prahl testified that he did not see anything in the specification that refers to the product set changing and that the contents set language does not appear in the

11

patent.  However, as has already been explained, the words in the claims need not appear word for word in the specification.  Nor are the terms all that lengthy or complicated.  Rather, they utilize common and understandable words such as "first," "second," "another," and "set" to modify "content" or "product."  When contents are changed as described in the specification, there can be little doubt which is the first contents set or the second contents set.

Defendants' main evidence as to whether the specification provides a written description of the claim language is the Stempel report.  Without any explanation, Stempel stated that he did not understand "first contents set" and "second contents set" and that he could not understand what is meant by positioning a "first contents set" in a container.

Considering the specification language and evidence in the light most favorable to MPT, the Court concludes that a reasonable juror could find that Defendants have not met their burden as to contents and its variants.  The specification discusses prior art methods of labeling reusable containers when their contents change.  Whether referred to as a "first," "second," or "another," "contents," or a "contents set," it is clear that the specification supports possession of the concept of those contents being added, removed and replaced in the container.

MPT's arguments as to "products" and its variants are quite similar.  MPT's expert Prahl stated that the patent "is directed to materials handling and labeling" or "commercial materials handling."  The specification explains that the contents have an "origin and quantity, . . . batch number, part number, serial number, quantity, and description."  From this MPT concludes that the contents represented by the labels are "produced."

Defendants contend that "these words clearly do not describe the claim term[]" product and its variants.  Such conclusory statements are not helpful. To meet their burden, Defendants

12

must explain why batch number, part number, serial number, quantity and description would not reference products held inside the container.

Defendants next argue that the same specification language cannot provide the written description for more than one claim term and that if "'contents' would suffice" there was no reason to use the term products. They have not cited any authority for either of these propositions. In any event, it does not appear that MPT is relying on the same language to describe contents and products. According to MPT, products is a subset of contents with identifying characteristics such as batch and part number.

Defendants also note that the claim terms were added after an initial rejection. Defendants thus argue that "the claims requiring a 'first product set,' 'second product set,' 'first product' or 'another product' were merely an afterthought intended to distinguish the claims from [a prior art patent] rather than to protect anything disclosed in the application." MPT correctly responds that an applicant is allowed to add limitations to claims during prosecution as long as the claim language is supported by the specification.

Finally, Defendants note that Prahl could not identify language in the specification that mentioned "a first product set" and that he could not explain where these limitations were described in the specification. Although this testimony does have some weight, it is not adequate to meet Defendants' burden on summary judgment. The specification clearly describes product-related indicia that are used to describe the changing contents of the reusable container. A person of ordinary skill in the art could understand from this language that the applicant possessed and described products and its variants being added, changed and replaced within the container.

13

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is DENIED.

       IT IS SO ORDERED.

                    /s/ Patricia A. Gaughan
                    PATRICIA A. GAUGHAN
                    United States District Judge

Dated:  7/14/06