**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MPT, Inc.** | ) | **CASE NO. 1:04-cv-2357** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Marathon Labels, Inc., and** | ) | |
| **Polymeric Converting, LLC** | ) | **Memorandum Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

A number of post-trial motions have been filed by the parties.  Plaintiff MPT, Inc.

("MPT") has filed a Motion for Entry of Judgment Including Permanent Injunction (Doc. 272)

and a Motion for Attorneys' Fees (Doc. 271).  Defendants Marathon Labels, Inc. ("Marathon")

and Polymeric Converting LLC ("Polymeric") have filed Renewed Motions for Judgment as a

Matter of Law (Doc. 270, 273).  MPT has filed a Motion to Strike Defendants' Motions (Doc.

277).  These motions follow a jury verdict in favor of MPT on its claims that Defendants

willfully infringed United States Patent No. 5,417,790 (issued May 23, 1995) (the "'790 patent")

and United States Patent No. RE 37,164 E (issued May 8, 2001) (the "'164 patent").  For the

following reasons, the Court GRANTS in Part MPT's Motion for Entry of Judgment Including

Permanent Injunction, GRANTS in Part MPT's Motion to Strike, GRANTS in Part Defendants' Motions for Judgment as a Matter of Law and DENIES MPT's Motion for Attorneys' Fees.

## BACKGROUND

MPT holds the '790 and '164 patents, which generally claim a method for the labeling and relabeling of reusable containers.  MPT sued Defendants for contributory and induced infringement on Claims 1, 2, 3, 4 and 6 of the '790 patent and Claim 1 of the '164 patent.  MPT claims that Marathon's customers infringe MPT's patents when they use Marathon's Smart Surface Placard product.  Polymeric manufactures the Teflon surface of the Smart Surface Placard.  Following a two-week jury trial a unanimous jury returned a verdict that both Defendants had contributed to the infringement of all of the patent claims at issue, that Marathon had induced infringement of all of the patent claims at issue, and that the infringement was willful.  (Doc. 267, 269).  Plaintiff now seeks entry of judgment, trebled damages, a permanent injunction and attorneys fees.  Defendants oppose MPT's motions in part by reference to the arguments set forth in their renewed motions for judgment as a matter of law.

## DEFENDANTS' RULE 50(B) MOTIONS

### a.      Standard of Review - Rule 50

Defendants have filed renewed motions for judgment as a matter of law under Rule 50(b).  The Court of Appeals for the Federal Circuit generally decides Rule 50(b) issues under regional circuit law, since "JMOL is not a patent-law-specific issue . . . ."  *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005).  "Judgment as a matter of law is appropriate when 'viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one

2

conclusion, in favor of the moving party.'" *Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006) (quoting *Noble v. Brinker Int'l*, 391 F.3d 715, 720 (6th Cir. 2004)); *see also Power-Tek Solutions Services, LLC v. Techlink, Inc.*, 403 F.3d 353, 358-59 (6th Cir. 2005) (explaining that the verdict must be supported by "substantial evidence" and the motion should be granted "[o]nly when it is clear that reasonable people could come to but one conclusion"). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Jordan*, 464 F.3d at 594 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)).

MPT's motion to strike focuses on waiver of the right to file a post-trial JMOL motion. A party can waive its right to file a Rule 50(b) motion where the Rule 50(a) motions made at trial failed to "specify the judgment sought and the law and facts on which the moving party is entitled to judgment." Fed. R. Civ. P. 50(a)(2). Although JMOL issues are generally governed by regional circuit law, Federal Circuit law governs whether general arguments made in a pre-verdict JMOL motion are sufficient to preserve specific patent law issues for a post-verdict JMOL motion. *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed. Cir. 2003). The two standards are not appreciably different in any event. Both Circuits recognize the Rule's purpose to alert the non-moving party and the court to the grounds of the motion prior to the submission of the case to the jury. *See Jordan*, 464 F.3d at 595 (noting that the pre-verdict motion must state the grounds with sufficient certainty that the court and opposing counsel are aware of the movant's position); *Duro-Last*, 321 F.3d at 1107 (explaining that "it would be constitutionally impermissible for the district court to re-examine the jury's verdict and to enter JMOL on grounds not raised in the pre-verdict JMOL").

3

**b.**   **Infringement**

1.   Failure to Comply with Rule 50(a)(2)

MPT argues in its Motion to Strike that Defendants have raised new noninfringement arguments in their renewed motions.  The Court has reviewed the various motions and agrees that a number of noninfringement arguments in the Rule 50(b) motions were not stated in the pre-verdict motions: 1) MPT failed to prove that the direct infringers utilize "reusable" containers; 2) MPT provided no evidence that any Marathon customer placed and removed pressure sensitive adhesive labels on Marathon's product; 3) MPT failed to provide any evidence that a "first product," "first contents set," "another product" or a "second contents set" is placed in a reusable container; 4) MPT failed to prove that the labels included "product quantities," "indicia" or product "information"; 5) MPT failed to prove that a first product set was positioned "at a selected one of a time prior to and subsequent to the first label applying step"; and 6) MPT failed to prove infringement of Claims 2 and 3 of the '790 patents with respect to the printing and transparent surfaces.

Defendants point to excerpts of the trial transcript as supporting their post-verdict motions.  However, the best that can be said for these excerpts and related written materials is that Defendants stated in the most general terms that MPT had failed to prove that all elements of the method claims were infringed.  This characterization may be somewhat charitable, since most mentions of claim elements other than a "release coated," "placard" or "substantially permanent attachment" related to whether the method steps were performed in the United States, not whether they were performed at all.  It is also notable that these subjects were not part of Defendants' trial brief, closing arguments, or trial strategy.  The Court must therefore decide

4

whether a general statement in a pre-verdict JMOL motion that the plaintiff has failed to prove that all elements of the claims were practiced by Defendants preserves the right to challenge specific elements (or dependent claims with respect to claims 2 and 3) that were never mentioned in the pre-verdict motion.

The Federal Circuit recently addressed a similar issue in *Duro-Last*.  The *Duro-Last* defendant moved for pre-verdict JMOL on inequitable conduct and the on-sale bar but failed to explicitly move on obviousness.  321 F.3d at 1106.  The defendant noted in its post-verdict motion on obviousness that the inequitable conduct motion discussed prior art references that were also relevant to obviousness.  *Id*. at 1107.  The Federal Circuit held that this was not adequate to preserve the issue for a Rule 50(b) motion.  New prior art references were raised in the post-verdict motion and the pre-verdict motion lacked any discussion of the previously-disclosed prior art references with respect to obviousness factors.[1]  *Id*.

This case is quite similar to *Duro-Last*.  Just as the *Duro-Last* plaintiff was unable to address the new prior art, MPT never had an opportunity at trial to address Defendants' new noninfringement arguments.  *See also W.S. Molnar Co. v. IKG Industries*, 39 U.S.P.Q.2d (BNA) 1219 (Fed. Cir. 1996) ("A general reference to a count . . . is insufficient to meet the rule's requirements" (citing *Libbey-Owens-Ford Co. v Inc. of N. Am.*, 9 F. 3d 422, 426 (6th Cir, 1993)).  Other district courts have reached a similar conclusion in patent cases.  *See, e.g., Am. Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 993 (W.D. Wisc. 2002) (allowing a post-verdict motion to elaborate upon the pre-verdict anticipation argument but not to set forth arguments on

---

[1]     The Federal Circuit also concluded that a pre-verdict JMOL on the on-sale bar was not sufficient to support a post-verdict motion on obviousness.  *Duro-Last*, 321 F.3d at 1107.

a new claim element). The Court's conclusion is buttressed by the fact that the new arguments could not even be gleaned from Defendants' conduct or argument at trial.[2]

Accordingly, the Court concludes that Defendants have waived certain noninfringement grounds which were never raised during pre-verdict JMOL motions. The Court will not consider any of the six arguments listed above.[3]

---

[2]     Courts usually "take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion" where the purpose of the rule—alerting the nonmovant and the Court of deficiencies in the nonmovant's case—is met. *Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th Cir. 2006). This explains cases like *Malta v. Schulmerich Carillons, Inc.*, which affirmed a post-verdict grant of JNOV where the attorney merely "moved for a directed verdict on claim 2 and claim 3 of the 082 patent on the grounds that the evidence is insufficient." 952 F.2d 132, 1324-25 (Fed. Cir. 1991). The post-verdict argument in *Malta* was related to the main infringement issue in the proceedings, not to new arguments that were never even addressed by Defendants as occurred in this case. In another case cited by Defendants, the Federal Circuit considered the motion because the moving party was cut short by the Court in its pre-verdict motion. *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990).

[3]     Many of the new arguments (e.g., regarding products sets and pressure sensitive labels) are conclusory and belied by clear trial testimony. Other new arguments that are given substantial attention by Defendants are completely frivolous. For example, Defendants argue that testimony regarding "returnable" containers failed to prove that "reusable" containers were used by direct infringers. However, witnesses testified in detail that the "returnable" containers were in fact "reused" many times over. Defendants also argue that the claim language "at a selected one of a time prior to and a time subsequent to the first label applying step positioning a first product set on the object" means that two first product sets must be positioned on the object—one at "a time prior to" and a second at "a time subsequent to" the first label applying step. This argument flatly ignores that the first product set is positioned "at a selected one of" these two times.

6

2.      Testimony of Dr. Prahl

Defendants generally ask the Court to disregard the testimony of MPT's expert, Dr.

Prahl.  The Court rejects these arguments for the same reasons it did at trial.  As a threshold

matter, Defendants did not object to Dr. Prahl's testimony in a timely manner.  Moreover, even if

they had objected properly the Court finds that Prahl's testimony was proper and that

Defendants' objections merely go to weight to be given his testimony.

3.      Substantially Permanently

Defendants argue that MPT failed to demonstrate that Marathon's customers

"substantially permanently" attach the Smart Surface Placard to containers.  First, they note that

Richard Rizzi, the representative of a Marathon customer, testified that a specimen demonstrated

to the jury was a poor example because it was placed over the residue of a previous placard

rather than directly on the surface of the container.  They also attack a video demonstration

performed by Patrick Kennedy.  They claim that "no direct evidence was offered as to: 1) when

the testing was actually begun; 2) by what method the Smart Surface Placard was attached to the

container; 3) where the container was obtained; 4) what type of container was utilized; 5) what

the condition was of the container prior to testing; 6) what conditions the container was

subjected to from the time the Marathon Smart Surface Placard was attached to the container

until it was removed; or 7) why the Marathon Smart Surface Placard was removed from the

container and taken out of view during the video taping."  They argue further that MPT failed to

explain a connection between the container used in the demonstration and the containers used by

Marathon customers.  Finally, Defendants note that MPT has certain product tests performed by

independent companies while the videotaped test was performed by Patrick Kennedy.  From

these observations they conclude that "Plaintiff's demonstrations are haphazard at best and are,

7

therefore, entitled to no evidentiary weight" and that Plaintiff failed to meet its burden of proving literal infringement.

MPT responds that the jury was shown ample evidence that the Marathon placards substantially permanently attach to objects or containers.  With respect to the testimony of Rizzi, the Marathon placards are sometimes placed over existing, damaged placards in their end use.  With respect to the Kennedy demonstration, Patrick Kennedy did in fact testify as to the timing of the tests, the choice of substrates for testing, and the method used to adhere the Marathon placards.  The jury could observe the conditions under which the test was performed.  As for Kennedy's potential bias, the jury was well aware of his position with MPT.

MPT also points to Defendants' own tests.  It notes that the jury could have concluded that the videotaped test Defendants demonstrated to the jury actually proved substantially permanent attachment.  First, the test shown to the jury could reasonably demonstrate damage to the placards as required by the Court's claim construction.  Second, the video demonstrator testified that he performed a first test in which he could not remove the Marathon placards from the container using his fingers.  This test was recorded over by the demonstrator and could not be shown to the jury.

Finally, the jury was also provided with testimony regarding the Marathon adhesive, the strength with which it adheres to various substrates, and its classification as a permanent adhesive.

The Court concludes that reasonable jurors could find that the Smart Surface Placard substantially permanently attaches to the containers used to practice the method.  Defendants' arguments go to the weight to be given the Rizzi and Kennedy demonstrations, and were fair game for argument before the jury.  A jury could also reasonably observe that the Smart Surface

8

Placards were substantially permanently attached in Defendants' own demonstration, particularly in light of the first test which was performed and then recorded over.[4]  Finally, the evidence regarding the adhesive provided further support that the placards are substantially permanently attached by end users.

    4.      Release Coated - Placard

Defendants contend that the Court erred in ruling at trial that no reasonable juror could find that Marathon's Smart Surface Placard did not have the claim elements of a "placard" with a "release coated" face.  They claim that the undisputed evidence demonstrates that the placard has two adhesive coated faces and thus cannot have a release coating.  In this regard, the structure of the Marathon product was undisputed.  At the center of the product are two attached polyester layers.  The exterior surface of the first polyester layer has adhesive that is used to attach to containers.  The exterior surface of the second polyester surface has a layer of adhesive that attaches the Teflon release surface.

The Court defined a "release coating" as "a covering that permits the easy and complete removal of pressure sensitive adhesive labels" and a "placard" as "a structure adapted for supporting a pressure sensitive adhesive backed label."  The patents generally claim a "placard having a release coated face . . . ."  Defendants argued in opposition to MPT's summary judgment motion on infringement that the adhesive layer between the second polyester layer and the Teflon release surface precluded a finding that the placard had a release coated face.  The Court denied MPT's motion for summary judgment because MPT failed to provide any evidence

---

    [4]      Defendants note that the videographer testified that he could not remove the labels in the first test because he had short fingernails. However, this is just the sort of credibility determination that juries are supposed to resolve.

as to the character of the adhesive that attached the Teflon release surface.

At trial MPT presented conclusive evidence and legal argument such that no reasonable juror could find that the placard lacked a release coated surface. With respect to the evidence, the adhesive is a thin layer with the sole purpose of attaching the Teflon to the polyester surface. Even if the polyester surface is the "face" of the placard, the Teflon still "covers" that face as required by the claims, since the Teflon can cover the placard even if it is not in direct contact with the placard. MPT also presented a correct legal argument that the claim term "placard" includes the adhesive layer, since the adhesive used to attach the Teflon is part of "a structure adapted for supporting a pressure sensitive adhesive backed label." Since the adhesive used to attach the Teflon is the exterior face of the placard, the Teflon is in direct contact with and thus covers the placard face.

The Court therefore concludes that its decision at trial was proper.

> 5.      All Elements Rule - in the United States

Defendants also argue that MPT failed to prove that any Marathon customer performed all steps of the method in the United States. As the Court noted at trial, to prove infringement of the method claims MPT was required to prove that all steps of the method were performed by a customer in the United States. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005). The Court agrees with MPT that the jury reasonably concluded that MPT did prove all steps of the method were performed in the United States. Marathon flatly admitted that at least some of its customers perform all of the steps of the method in the United States. Marathon's largest customer also testified to all of the steps of the method being performed in the United States. Although in some cases certain method steps are performed in Mexico, the jury clearly considered this and limited damages accordingly.

10

**6.**  Contributory Infringement - Substantial Non-Infringing Use

In this case, it was Marathon's customers who practiced the method.  Marathon and Polymeric were accused of contributory infringement and inducement to infringe.  Contributory infringement requires that the items sold by Marathon and Polymeric are "not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. 271(c).

Defendants make two arguments with respect to substantial non-infringing uses.  First, they generally argue that MPT failed to show that the products produced by Defendants do not have other uses.  However, Marathon testified that the Smart Surface Placards are "all custom products."  Testimony from Polymeric indicated that the Teflon coating was produced specifically for Marathon's application.  MPT's expert also testified that the sole purpose of Marathon's end-product was to perform the patented method.  Based on this testimony, a jury could reasonably conclude that MPT met its burden of demonstrating no substantial noninfringing use.[5]

Defendants' second argument is a legal argument that the use of their products to perform the methods abroad is a substantial noninfringing use.  The Court agrees with other courts to address the issue that the substantial noninfringing use cannot be acts that would otherwise

---

[5]     Defendants also argue that use of the Smart Surface placard on racks is a substantial noninfringing use.  The jury implicitly found that sales for racks are not a substantial noninfringing use.  This conclusion was reasonable in light of Claim 6 of the '790 patent, which covers a "process for providing product information on *objects* . . . ."  (emphasis added).  It is clear from Claim 7 that object is broad enough to include racks, since that dependent claim further provides for "the process of claim 6 wherein the object is a container."  *See Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir. 2006) ("The doctrine of claim differentiation suggests that the independent claims here should not include explicit limitations of a dependent claim.").

11

infringe but are performed in a country where there is no patent.[6]  *Lucas Aerospace, Ltd. v. Unison Indus., L.P.*, 899 F. Supp. 1268, 1287 (D. Del. 1995); *02 Micro Int'l Ltd. v. Sumida Corp.*, No. 2:03-cv-07, 2006 U.S. Dist. LEXIS 18859, *8 (D. Tex. 2006); *LG Elecs., Inc. v. Asustek Computer, Inc.*, No. C 01-00326, 2002 U.S. Dist. LEXIS 25956, *35-37 (N.D. Cal. Aug. 20, 2002).  As a general rule, United States patent laws do not reach conduct that occurs overseas.  *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972) (explaining that "[o]ur patent system makes no claim to extraterritorial effect").  It follows that acts that occur overseas cannot serve as a substantial noninfringing use for purposes of a domestic infringement analysis.  This is particularly true where the overseas use would be an infringement of the patent if it occurred in the United States.  The peculiar result of Defendants' reasoning would be that contributory infringers are immune from liability so long as the component used to infringe the method is also exported elsewhere.  Defendants' reasoning might also require courts to opine on the scope of foreign patent rights.  For example, if the patentee has a patent in a foreign country, the infringement of that foreign patent would negate a finding of a substantial noninfringing use. The Court does not believe Congress envisioned a test that would require advisory rulings on foreign patent rights as a precursor to liability in this country.  For these reasons, the Court rejects Defendants' argument.

       7.          <u>Contributory Infringement - Polymeric</u>

---

[6]      Defendants argue that none of these other courts have addressed a method patent.  However, Section 271(c) does not distinguish between components that can be used to practice a method and components that can be combined into an apparatus.  The Court cannot see any reason to distinguish between the two on the issue of whether foreign activities can serve as a substantial noninfringing use.

Polymeric argues that it cannot be liable in light of the Court's jury instruction regarding contributory infringement.  The Court adopted MPT's proposed instruction and instructed the jury as follows:

> MPT argues that Marathon and Polymeric have contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. In order for there to be contributory infringement by a defendant, someone other than that defendant must directly infringe a claim of the 790 or 164 patents; if there is no direct infringement by anyone, there can be no contributory infringement. If you find someone has directly infringed the 790 or 164 patent, then contributory infringement exists if:
> (1) The defendant supplied an important component of the infringing part of the method;
> (2) The component is not a staple article of commerce suitable for non-infringing use; and
> (3) The defendant supplied the component with the knowledge of the 790 and 164 patent and knowledge that the component was especially made or adapted for use in an infringing manner.
> A "staple article of commerce capable of substantial noninfringing use" is something that has uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.
> In this case, as I have explained, MPT argues that Marathon's customers and others who use the product are the ones who are directly infringing the patents, and that the 'important component' supplied to them is the Smart Surface™ Placard.  Defendants argue that the way the customers and others who use the Smart Surface™ Placard use that product does not infringe any claim of the 790 or 164 patents.
> If you find that Marathon and/or Polymeric has contributed to the infringement of at least one claim of the 790 or 164 by another, then they are responsible for infringing that claim as if they were direct infringers.

Polymeric notes that the jury instruction states that "the 'important component' supplied to [Marathon's customers] is the Smart Surface™ Placard."  Polymeric argues that this portion of the instruction required the jury to find that Polymeric actually supplied the Smart Surface placard in order to find it liable for contributory infringement.  It points to testimony that its role was to provide the Teflon laminate to Marathon, which then combined the Teflon with other

13

components[7] to make and sell the Smart Surface product.  Marathon was thus the only Defendant to supply the finished Smart Surface product to its customers.

The Court finds that the jury instruction did not limit the jury as Polymeric contends. The portion of the instruction referenced by Polymeric merely described one portion of the component/supply relationship—i.e., the important component supplied by Marathon to its customers.  Although it would have been acceptable to further explain that the important component supplied by Polymeric to Marathon[8] was the Teflon laminate, the instruction as a whole is clear that each Defendant, and the component supplied by that Defendant, must be considered individually.

8.      Inducement to Infringe

Marathon's only argument is that MPT failed to prove direct infringement.  Because the Court disagrees, the Court also finds that the inducement verdict is supported by substantial evidence.

**c.      Invalidity/Unenforceability**

1.      Failure to Comply with Rule 50(a)(2)

MPT also challenges Defendants' original JMOL motions on invalidity.  It points to the

---

[7]     Polymeric notes in passing that its "role in producing the Teflon laminate is analogous to Avery Dennison's role in supplying a laminate that Marathon utilized in the manufacture of Marathon's Smart Surface Placard."  Although there are some parallels, the Court notes a major distinction that the Avery Dennison portion of the Smart Surface placard is a standard product with obvious substantial noninfringing uses.

[8]     The jury could also reasonably conclude from testimony, correspondence and Polymeric's own patent that Polymeric knew that the product it supplied to Marathon would be used to produce a product to practice the patented method.

14

argument of defense counsel at the close of the rebuttal case.  However, that argument also incorporated earlier arguments, including Defendants' arguments in opposition to Plaintiff's JMOL motion at the close of Defendants' case on invalidity, unenforceability and noninfringement.  Referring back to that portion of the transcript, Defendants fully addressed the issues of obviousness, written description, indefiniteness and unenforceability.  On these issues MPT was fully apprised of Defendants' position and the purpose of the rule has been met. *Kusens*, 448 F.3d at 361; *Jordan*, 464 F.3d at 595.

    2.    <u>Obviousness</u>

Defendants first state that the Court erred in submitting obviousness to the jury.  The Court disagrees:

> Obviousness is a question of law based on factual underpinnings. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 148 USPQ 459, 467, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966). When the parties dispute the underlying facts, the issue of obviousness typically is submitted to the jury, as it was in this case. *See Jurgens v. McKasy*, 927 F.2d 1552, 1557, 18 USPQ2d 1031, 1035 (Fed. Cir. 1991).

*Duro-Last*, 321 F.3d at 1108; *see also Hewlett-Packard Co. v. Mustek Sys.,* 340 F.3d 1314, 1319 (Fed. Cir. 2003).

With respect to the jury's decision, Defendants did not claim that a single reference anticipated MPT's claims.  Rather, they argued that a combination of prior art rendered the invention obvious.  Obviousness is tested under the following standard:

> One attacking the validity of a patent must present clear and convincing evidence establishing facts that lead to the legal conclusion of invalidity. 35 U.S.C. § 282. To establish invalidity under 35 U.S.C. § 103, certain factual predicates are required before the legal conclusion of obviousness or nonobviousness can be reached. The underlying factual determinations to be made are (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art;  and (4) objective evidence of non-obviousness, such as commercial success, long-felt but unsolved need, failure of others, copying, and unexpected results. *Graham v. John Deere Co.*, 383 U.S.

15

1, 17, 148 U.S.P.Q. (BNA) 459, 467, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966).

*Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 26 (Fed. Cir. 2000).

Defendants claim that the patented method was rendered obvious by the combination of a number of prior art references.  French Patent No. 2 649 522 and Derwent Publications Alerting Abstract Bulletin Week 9109 of French Patent No. 2 649 522 describe a structure with a silicone release surface for the labeling and relabeling of computer diskettes.  Defendants' expert Stempel testified that this is essentially what MPT's patents attempt to claim.  IRS address labels and other piggyback labels were in common use and also had a release surface that allowed for the removal of pressure sensitive adhesive labels.  Testimony from an industry representative and an industry handbook explained that a piggyback label could be used for multiple applications of labels.  As for the concept of labeling and relabeling, Robert Petrou, the inventor of the patents-in-suit, testified that he came up with his idea while observing Goodyear labeling and relabeling its containers, albeit without the use of a placard and with a buildup of residue.  Delphi representative Rizzi testified that it had been labeling and relabeling for many years without the use of a placard.  From this evidence Defendants conclude that the structure used to practice the method was not novel, that labeling and relabeling was not novel, and that the use of the structure to label and relabel was obvious.

Plaintiff responds, and the Court agrees, that Defendants are not entitled to JMOL on obviousness.  A reasonable jury could conclude that the scope and content of the prior art was substantially different from the method and underlying structure of MPT's patents.  MPT's expert Prahl testified to a number of structural differences between the device of the French patent and the structure used to practice  MPT's patented method.  The actual use of piggyback labels was as a carrier for a pressure sensitive adhesive label.  In the example of an IRS 1040

label, the label is reused while the placard portion is thrown away.  This is the opposite of MPT's

method, where the placard is reused many times over.  Testimony regarding prior practice of the

method without a release coated placard actually supports a finding of nonobviousness.  Prior to

MPT's invention Goodyear and Delphi had difficulty removing labels and applying new ones,

but nonetheless failed to utilize a placard to perform labeling and relabeling.  A jury could

reasonably conclude that those skilled in the art, such as Goodyear, Delphi and their suppliers,

therefore did not find it obvious to use a placard to perform the method.  Finally, the jury

received evidence of substantial commercial success under the patent, industry awards, and

copying by others—all of which are relevant objective evidence of nonobviousness.

> 3.    Written Description

The Court previously summarized the written description requirement as follows:

> As applied to this case, this means that the language of the later-amended claims
> must find appropriate support in the original specification of the '882 application.
> That specification must include sufficient information to show that the inventor
> possessed the later-claimed invention at the time of the original disclosure.
> *Pandrol USA, LP v. Airboss Railway Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir.
> 2005).  "The purpose of the written description requirement is to prevent an
> applicant from later asserting that he invented that which he did not; the applicant
> for a patent is therefore required to 'recount his invention in such detail that his
> future claims can be determined to be encompassed within his original creation.'"
> *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003)
> (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991)).
>
> Although generally stated as the "possession" test, a showing of actual possession
> at the time of the original disclosure is not enough; rather, "the written description
> requirement is satisfied by the patentee's disclosure of 'such descriptive means as
> words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed
> invention.'"  *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir.
> 2002) (quoting *Lockwood v. American Airlines*, 107 F.3d 1565, 1572 (Fed. Cir.
> 1997)).  In other words, the purpose of the test is to demonstrate possession of the
> claimed invention and possession is proved by full disclosure of what is claimed.
> *Enzo*, 323 F.3d at 969.  "The possession test requires assessment from the
> viewpoint of one of skill in the art."  *Pandrol*, 424 F.3d at 1165.

17

(Doc. 168).

As the Court previously explained in denying Defendants' motion for summary judgment that "substantially permanently" fails the written description test, that exact phrase does not appear in the original specification.  Nonetheless, the original specification describes firmly securing the placard to a container using an adhesive, which closely parallels "substantially permanently" attaching a placard to a container with an adhesive as is described in the claims. The specification also describes permanent adhesives with respect to labels, which are known in the art to be the same type of adhesives used on the placard portion.  There was a great deal of testimony at trial regarding the known properties of adhesives and adhesive bonding from which the jury could come to understand the level of skill in the art and reasonably conclude that Defendants failed to meet their burden of proving that MPT did not possess or describe the concept of "substantially permanent" attachment at the time the specification was filed.

    4.    <u>Indefiniteness</u>

The indefiniteness inquiry originates from the statutory requirement that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112 ¶2. A claim is invalid as indefinite if it is not amenable to construction.  *Aero Prods. Int'l, Inc. v. Intex Rec. Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006).  At the behest of Defendants, the Court construed "permanently" by reference to a common industry definition of a permanent adhesive. Defendants now argue that other definitions of permanently—such as "high adhesion," "great deal of force to remove," and "high ultimate adhesion to a wide variety of surfaces"—render it impossible to construe permanently.  To the contrary, these definitions are all similar, and only serve to reinforce that permanently is a term that was amenable to construction and was properly

18

defined in the first place.

Defendants also argue that the claims are indefinite because adhesives have different properties on different substrates.  This argument misses the point of the claims.  They do not claim a particular adhesive or a substrate, but rather a method involving "substantially permanently" attaching a placard to a substrate.  If a potential infringer chooses a substrate and adhesive where the placard does not attach in this manner, there is no infringement.  The patent claims here provide ample guidance for competitors to make such an assessment.

5.    Inequitable Conduct

A patent applicant has a duty of candor and good faith before the Patent and Trademark Office.  37 C.F.R. § 1.56(a).  Courts enforce the duty of candor and good faith through the doctrine of inequitable conduct.  *Molins PLC v. Textron*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). Inequitable conduct includes affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information, coupled with an intent to deceive.  *Li Second Family Ltd. P'shp. v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000). When a claim of inequitable conduct is based on an applicant's failure to disclose material information, the party challenging the patent must show that the prior art information was material to patentability, the applicant had knowledge of the prior art and of its materiality, and the applicant intended to mislead the PTO through the failure to disclose the information.  *FMC v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

The jury concluded that Defendants failed to meet their burden of proving inequitable conduct.  Defendants challenge that conclusion.  However, the Court finds that the jury could have reasonably concluded that the applicant did not fail to disclose anything.  There was conflicting testimony whether the applicant submitted an actual IRS label or a photocopy.  If an

actual label was submitted the jury could easily find that the duty of candor was satisfied.

### d.    Damages

Defendants do not seriously challenge the amount of damages.  Indeed, the jury only awarded $3,561.64 in damages based on a 7% reasonable royalty rate.  In light of the total sales of products used to perform the patented method, this verdict clearly accounted for noninfringing sales, such as those to customers in Mexico.  *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1072 (Fed. Cir. 2003) ("A jury's decision with respect to an award of damages 'must be upheld unless the amount is "grossly excessive or monstrous", clearly not supported by the evidence, or based only on speculation or guesswork.'")(citation omitted).

Defendants focus instead on the jury's finding that infringement was willful.[9]  A potential infringer on notice of another's patent right has an affirmative duty of due care to avoid infringement.  *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109 (Fed. Cir. 1986).  "A finding of willfulness requires that the fact-finder find, by clear and convincing evidence, that the infringer acted in disregard of the infringed patent with no reasonable basis to believe it had a right to do the acts in question."  *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1279 (Fed. Cir. 1995); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1063 (Fed. Cir. 2003).  "This is a factual determination made after considering the totality of the circumstances."  *Transmatic*, 5 F.3d at 1279.  "[T]he primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing."  *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464-65 (Fed Cir. 1997).  Factors to be considered include

---

[9]    The Court finds that Defendants adequately raised the issue of willfulness in their motions at trial.

20

"[w]hether the infringer intentionally copied the ideas of another; whether the infringer, once on notice of the patented invention, investigated the scope of the patent to form a good-faith belief that it was invalid or not infringed; and the infringer's behavior as a party to the litigation . . . ." *In re Hayes Microcomputer Prods*, 982 F.2d 1527, 1543 (Fed Cir. 1992).

The Court agrees with Defendants that a reasonable jury could not conclude that MPT submitted clear and convincing evidence of willful infringement.  Rather, all of the evidence and testimony points to a conclusion that Defendants' infringement was not willful.  When Marathon's Hurley came across a product which he believed to infringe earlier in his career, he immediately removed the product from the market.  These are the acts of a person acting in good faith to avoid infringement.  Although MPT accuses Defendants of slavishly copying their product, the undisputed testimony is that the products themselves have a different structure.  They are manufactured from different sublaminates.  Although this ultimately did not result in a verdict of noninfringement,[10] the undisputed testimony is that Defendants attempted to design around Plaintiff's patent.  Infringement is not willful simply because Plaintiff's product was the starting point for Defendants' product.[11]  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir.

---

[10]     For example, the structure of the "placard" portion of the two products is substantially different.  However, a "placard" was widely defined as a "a structure adapted for supporting a pressure sensitive adhesive backed label."  Similarly, the "release coating" of the Marathon product is made from Teflon while MPT's product is made from silicone.  Both are nonetheless "coverings that permits the easy and complete removal of pressure sensitive adhesive labels."

[11]     The Court of course recognizes that these are method patents at issue.  However, the method involves the use of a specific structure.  One way to avoid infringement would be to design a product that does not have that structure but can perform the same method steps.

21

1992).  Rather, the patent system encourages good faith attempts to "design around" patented inventions.  *Id.*; *see also WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed Cir. 1999) ("When the district court reconsiders its finding of willful infringement, it should bear in mind that the patent law encourages competitors to design around existing patents").  The fact that the Defendants' design turned out to be within the scope of the patent is not conclusive; what matters is state of mind.  *Read*, 970 F.2d at 828.

Plaintiff argues that Defendants should have obtained an opinion of counsel.  However, the Federal Circuit recently explained that the failure to obtain legal advice does not result in an adverse inference with respect to willful infringement.  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004); *see also State Contracting*, 346 F.3d at 1064 (noting that "we have not held that obtaining the advice of counsel is the only means to avoid a finding of willfulness, regardless of the circumstances").  Here, Dronzek of Polymeric—a person with significant industry experience—testified to his good faith belief that the Teflon surface he produced for use with the Smart Surface Placard was not a "release coating" as contemplated by the claims.[12]  Along those lines, he obtained a patent

---

[12]     Dronzek relied in part on a statement from a later Kennedy patent application that "The release surface may be a coating applied to the protective layer 22 or may be a property of material from which the protective layer 22 is made."  The Court addressed this statement previously.  Kennedy appears to be distinguishing between a protective layer (e.g., a functional layer like the "placard" support layer in the '790 and '164 patents) with inherent release properties and one that requires a coating.  In the Smart Surface Placard, the Teflon coating only supplies release properties and does not also serve as the support layer.  Nonetheless, this does not mean that Defendants were entirely unreasonable and were not acting in good faith.

related to the Smart Surface Placard.[13]  Marathon's Smart Surface Placard was not sold until after the patent issued.  In light of these circumstances, the only reasonable conclusion is that Defendants took care not to infringe.

MPT's focus on communications between Dronzek, Hurley and a third party regarding the eventual marketing and sale of a product is similarly unavailing.  The important point is that Defendants had a good faith belief that they were not infringing.  In such cases, there is nothing willful about planning to start a business.  Their attempts to remain "under the radar" until they launched their product are typical of reasonable business actions.  It is the rare business that will provide its competitors with advance notice that it has built what it believes to be a better product.  When Marathon did launch the product, it did not hide that it would be used to perform the method.  Instead, it candidly and prominently advertised its use to perform the method, a fact that Plaintiff used to its advantage in its infringement case.  However, this is not the conduct of a party attempting to hide from a patent it believes to be infringed.

Moreover, MPT alleged infringement by Defendants almost immediately after the products hit the market.  Defendants obtained counsel and responded with reasonable noninfringement and invalidity positions that they have maintained throughout this litigation.  This is the conduct of reasonable actors acting in good faith and the Court does not believe a reasonable jury could conclude otherwise.

In sum, all of the evidence presented points to Defendants taking careful, measured

---

[13]     The fact that a party has a patent does not mean that they cannot infringe the claims of another patent's broad "dominant" claims. *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 n.9 (Fed. Cir. 1986).  However, the issuance of a patent does provide evidence that Defendants' had a good faith belief of noninfringement.

23

action with respect to Plaintiff's patent rights.  The Court therefore concludes that a reasonable jury could not have found clear and convincing evidence of willful infringement and JMOL is therefore appropriate on this issue.

### e.    New Trial[14]

#### 1.    Jury Confusion

At trial Marathon went through a list of its customers and explained how each customer used the Smart Surface Placards.  Some of the purchasers were resellers—i.e., middlemen who sold the Smart Surface Placard to the end user.  At Defendants' request, the Court bifurcated liability and damages.  In the liability phase of the trial, the jury was asked whether "any of Marathon's customers infringe any of claims 1, 2, 3, 4 or 6 of the '790 Patent or claim 1 of the '164 Patent?"  The jury answered "yes" and in response to the next question indicated that all 6 of the claims at issue were infringed by "Marathon's customers . . . ."  In the damages phase of the trial, the jury was asked "[i]f you find that a Marathon customer who bought the Smart Surface Placard performed all of the steps of the patents-in-suit in the United States, please identify the customer by name."  The jury included two resellers in its list of customers.  Defendants seek a new trial under Rule 49(b), which states that "[w]hen the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."  Fed R. Civ. P. 49(b).

Defendants have waived the right to challenge the verdicts as inconsistent.  After the jury's damages verdict was read, the Court and the parties' counsel engaged in the following

---

[14]    Defendants have not moved for a new trial under Rule 59.

exchange:

> THE COURT: Counsel, do you wish to see it?  Before I discharge the jury is there anything further?

> MR. SHUNK: Your Honor, obviously we want to move the Court for a permanent injunction, but I assume that you want to receive that in writing.

> THE COURT: That is correct.  And I'm really speaking of any other matters before I discharge the Jury.  But yes, you have to brief that.

> MR. SHUNK: Yes.  Nothing from the plaintiff, Your Honor.

> MR. COSTIGAN: Nothing.

> MR. WILSON: I'll renew my motion, but that's for after you get rid of the Jury. Nothing further.

"Most courts that have addressed the issue have held that a party's failure to object to an inconsistency between a special interrogatory and the general verdict waives the right to further deliberation or to a new trial."  9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2513 pp. 226-27 (2d ed. 1995).  The Federal Circuit recently addressed the application of Sixth Circuit law to this issue as follows:

> We apply the law of the pertinent regional circuit to the procedural rules regarding inconsistent jury verdicts and the waiver of objections to such verdicts. *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302 & n.1 (Fed. Cir. 2002). Under Sixth Circuit law, a party waives its objection to inconsistency in a jury's verdict if the party had an adequate opportunity to object but failed to do so.

*L & W, Inc. v. Shertech, Inc.*, 06-1065, 06-1097, 2006 U.S. App. LEXIS 30617, * 16 (Fed. Cir. Dec. 14, 2006) (citing *Tennessee Consolidated Coal Co. v. United Mine Workers of America*, 416 F.2d 1192, 1200 (6th Cir. 1969)); *see also Mitchell v. Hallden Mach. Co.*, Nos. 92-5465, 92-5596, 92-5706, 92-5707, 1994 U.S. App. LEXIS 5640 (6th Cir March 23, 1994) ("Failure to object to such an inconsistency in a timely manner constitutes a waiver of the objection.").

Because both of Defendants' counsel had ample opportunity to object to any

inconsistency but failed to do so, the Motion is denied.[15]

### f.    Conclusion - Defendants' Motions & MPT's Motion to Strike

The Court GRANTS Defendants' JMOL motion on the issue of willfulness.  The Court

otherwise finds that Defendants' contentions are either without merit or stricken.

### PLAINTIFF'S MOTIONS

### a.    Enhanced Damages

A patentee may be entitled to trebled damages for infringement under 35 U.S.C. § 284.

The threshold question is typically whether infringement was willful, and the enhanced damages

inquiry involves similar factors.  *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d

1462, 1464 (Fed Cir. 1997) (explaining that "willful infringement . . . is the term designating

behavior for which enhanced damages may be assessed"); *In re Hayes*, 982 F.2d at 1545

(explaining that a "finding of willfulness may be a basis for an award of enhanced damages");

*Read Corp. v. Portec, Inc.*,  970 F.2d 816, 826 (Fed. Cir. 1992) (noting factors of deliberate

copying, the infringer's investigation, the duration of misconduct, remedial action by the

defendant, the defendant's motivation for harm, and whether the defendant attempted to conceal

its conduct).  Here, the Court finds that enhanced damages are improper for the same reasons it

granted Defendants' JMOL motion on willful infringement.  Moreover, other enhanced damages

factors such as the infringer's behavior as a party, the Defendants' size and financial condition

and the closeness of the case all counsel against enhanced damages. *Read*, 970 F.2d at 827.  The

Court finds that Defendants—both relatively small companies—were forthright throughout the

---

[15]    The Court notes that in any event the verdicts were not
inconsistent.  The general verdict regarding infringement merely
asked if "any" Marathon customer infringed.  Moreover, evidence
was presented that the resellers' customers infringe.

proceedings.  Moreover, MPT's claims were by their nature difficult to prove.  Because it does not have a patent on the placards, it had to prove direct infringement of the patented method as well as contributory or induced infringement by Defendants.

### b.        Permanent Injunction

The Supreme Court recently addressed injunctions in patent cases in *EBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).  At issue in the *Ebay* case was the Federal Circuit's "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances."  *Id*. at 1839.  A unanimous Supreme Court found this approach lacking, and held "that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards."  *Id*. at 1841.

Two concurrences were filed which addressed related points.  Chief Justice Roberts (joined by Justices Ginsburg and Scalia) noted that "from at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases."  *Id*.  Although this historical practice does not entitle a patentee to an automatic permanent injunction or justify a general rule in favor of injunctions, it does provide guidance to courts in the vast majority of run-of-the-mill patent cases.  *Id.*  Justice Kennedy (joined by Justices Stevens, Souter and Breyer) first acknowledged that "historical practice . . . is most helpful and instructive when the circumstances of a case bear substantial parallels to litigation the courts have confronted before."  *Id*. at 1842.  Justice Kennedy then noted certain patent practices that arose only recently.  For example, some firms patent only a small component of a larger device, then use the threat of an injunction to charge exorbitant licensing fees to the

27

manufacturer of the complete device.  *Id*.  Other patents such as business method patents are

relatively new and have problems with "substantial vagueness and suspect validity."  *Id*.

The core holding of *Ebay* is that a plaintiff must demonstrate the following four factors

for a court to exercise its equitable discretion to grant a permanent injunction:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law,
> such as monetary damages, are inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the plaintiff and defendant, a
> remedy in equity is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

*Id.* at 1838.

First, the Court finds that MPT has suffered irreparable injury.  MPT, along with the

closely related company The Kennedy Group ("TKG"), obtained patents that allowed them to

gain a dominant position in the sale of placards for use in the patented method.  These patents

are not an insubstantial component of a larger invention or a new form of patentable material.

Instead, MPT has broad patent protection that reads directly upon the use of Marathon's Smart

Surface Placard to practice the method.  MPT invented a method, actively created a market, and

established a strong market position and customer goodwill.  Usurping this market by inducing

or contributing to infringement will irreparably harm MPT.  *See, e.g., Basicomputer Corp. v.

Scott*, 973 F.2d 507, (6th Cir. 1992) ("The loss of customer goodwill often amounts to

irreparable injury because the damages flowing from such losses are difficult to compute."); *Tivo

Inc. v. Echostar Communications Corp.*, 446 F. Supp. 2d 664, 669 (E.D. Tex. 2006) (finding

irreparable harm where "Defendants compete directly with Plaintiffs" and the plaintiffs face loss

of market share).

Second, monetary damages are not adequate to compensate for MPT's injury.  Royalties

will not stop the erosion of MPT and TKG's market.  Another market entrant is likely to lead to

28

a drop in prices, thus reducing MPT's royalties from Defendants and TKG as well as TKG's profits.  Allowing Marathon to sell the Smart Surface Placard in the United States market will also damage MPT in that all placards have previously been provided by MPT.  This implicates a significant impact on MPT's commercial reputation.

Third, the balance of hardships tips in favor of MPT.  Only 10-15 percent of Marathon's total business[16] consists of sales of Smart Surface Placards.  A large percentage of those are sold to Mexico and are not subject to an injunction.  Thus, only a small percentage of Marathon's total sales will be prohibited by an injunction.  As has already been noted, MPT is likely to face substantial hardship from the continued infringement of the patents in the United States.

Finally, the public interest supports an injunction.  There is a general public interest in favor of strong patent protection, except in cases where an obvious public interest such as public health and safety exists.  *Tivo*, 446 F. Supp. 2d at 670.  Here, the method at issue is quite useful to the shipping industry.  However, there is no critical public need for use of placards to practice the patented method, and MPT/TKG is more than willing to provide for customers' needs with a product that works in the vast majority of applications.

Accordingly, MPT is entitled to a permanent injunction under the traditional four-factor test.

Defendants next argue that MPT should be barred from seeking equitable relief by the doctrine of unclean hands.  The Court is well aware of the conduct of all parties and counsel throughout this litigation.  It finds that the parties and their counsel have acted professionally, complied with Court orders, and otherwise have generally taken good faith positions during this

---

[16]    Defendants did not address hardship to Polymeric.

litigation.  Accordingly, unclean hands has no application here.

Finally, the Court generally finds that Plaintiff's proposed language for a permanent injunction is proper.  Although the Court agrees with Defendants that an injunction must be stated in specific terms and narrowly tailored to fit the specific legal violations,[17] their arguments regarding the scope of the injunction largely miss the mark.  The jury has already found that the Smart Surface Placard does not have a substantial noninfringing use.  Thus, any use of the placards will necessarily be to practice the method.  However, the Court does agree that the prohibited products should be limited to those only "colorably different" from the Marathon Smart Surface Placard.  *E.g., Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316-17 (Fed. Cir. 2004); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 480 (Fed. Cir. 1993).

As for Defendants' argument that placards sold in the United States may be shipped to Mexico for use there, the Court recognizes that use of the devices in Mexico does not infringe the patents.  However, this does not justify allowing the sale of placards in the United States, based on the mere possibility that they may be shipped to Mexico or some other country for their use.  Instead, it is most likely that placards will be used in the country where they are purchased.  However, if Defendants wish to sell Smart Surface Placards in the United States for use in other countries, the Court notes that the Smart Surface Placards are capable of marking with print and graphics on the top coat.  Products to be sold in the United States could carry a warning, permanently and prominently printed upon the top coat, explaining that the use of the placard to

---

[17]   Fed R. Civ. P. 65(b); *Gemveto Jewelry Co., Inc. v. Jeff Cooper Inc.*, 800 F.2d 256, 259 (Fed. Cir. 1986); *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1525-27 (Fed. Cir. 1985).

perform the method in the United States infringes the '790 and '164 patents.  Absent an appropriate disclaimer, Defendants and their employees, officers, agents, and those acting in concert therewith are permanently enjoined from using, selling, or offering to sell within the United States, or importing into the United States, the SmartSurface Placard or any product that is not colorably different from the SmartSurface Placard.

### c.        Attorneys' Fees

MPT seeks attorneys' fees under 35 U.S.C. § 285, which states that the "court in exceptional cases may award reasonable attorney fees to the prevailing party."  "Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit."  *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1527, 1551 (Fed. Cir. 1989).  A case may be exceptional where the losing party is found to have acted willfully, recklessly, or with gross negligence in assessing and presenting its case to the court. *Eltech Systems Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810-811 (Fed. Cir. 1990).

MPT contends that Defendants were at least guilty of gross negligence in their defense. It argues that Defendants only had one reasonable defense—relating to the release coating—and that the defense was negated with the Court's *Markman* decision.  Defendants nonetheless continued to press their release coating argument throughout the proceedings and into trial. MPT further notes what it perceives as bad faith litigation conduct regarding the substantially permanent attachment argument.  It posits that this Court's denial of its infringement summary judgment motion hinged solely upon a Telofski DVD test that later turned out to have been the second test conducted after the first test failed.

With respect to the DVD test, the Court agrees with Defendants that it was not the reason

31

the Court denied summary judgment on infringement.  Rather, the Court found that MPT had

failed to provide sufficient evidence to meet its burden of proving that Defendants' customers

practiced the claimed methods.  This distinction is important, because it also demonstrates why

Defendants were not willful, reckless or grossly negligent in continuing to press their case after

the *Markman* ruling.  This case was not solely about the structure of the Smart Surface Placard.

Because MPT's patents have method claims, it also had to prove that the method was practiced

by someone.  This is an inherently difficult inquiry where none of the direct infringers are parties

to the suit.  Morever, Defendants had reasonable invalidity and unenforceability defenses.  For

these reasons, the Court declines to find that this case is exceptional as would warrant attorneys

fees.

However, MPT is entitled to costs under Rule 54(d).  Defendants argue that costs are

prohibited under 28 U.S.C. § 1928, which provides as follows:

> Whenever a judgment is rendered for the plaintiff in any patent infringement
> action involving a part of a patent and it appears that the patentee, in his
> specifications, claimed to be, but was not, the original and first inventor or
> discoverer of any material or substantial part of the thing patented, no costs shall
> be included in such judgment, unless the proper disclaimer has been filed in the
> United States Patent and Trademark Office prior to the commencement of the
> action.

28 U.S.C. § 1928.  Defendants then focus on the testimony of the inventor Petrou who explained

that he witnessed Goodyear employees labeling and relabeling without placards.  It was

Goodyear's problems with messy removal, cleaning and multiple barcodes that led Petrou to

invent the use of a placard device to practice the method of labeling and relabeling.  Because

labeling and relabeling without placards existed prior to Petrou's invention, Defendants argue

that Goodyear was the "original and first inventor of any material or substantial part of the thing

patented . . . ."

32

The parties have not provided and the Court has been unable to uncover any modern authority regarding Section 1928.  However, older cases are in agreement that the statute refers to instances where the plaintiff has prevailed on some claims of the patent while other claims have been held invalid but not disclaimed or would have been held invalid without a disclaimer. *United Shoe Machinery Corp. v. Mathey,* 117 F.2d 331, 334 (1st Cir. 1941) (refusing costs for successful infringement plaintiff where other claims were invalid but not disclaimed); *John W. Gottschalk Mfg. Co. v. Springfield Wire & Tinsel Co.*, 75 F.2d 907, 908 (1st Cir. 1935) (holding that "no costs can be allowed when a claim is held invalid and no disclaimer has been filed before suit is brought"); *Nat'l Elec. Signaling Co. v. De Forest Wireless Tel. Co.*, 140 F. 449, 455 (C.C.N.Y. 1905) ("The statutes restricting costs upon filing a disclaimer after suit seem only to apply where a disclaimer is necessary to upholding the patent, and is filed for the purpose of saving it."); *Metallic Extraction Co. v. Brown*, 110 F. 665, 668 (8th Cir. 1901) (holding "although the decree below is sustained as to claim 1, no costs can be recovered by the complainant below . . . , since no disclaimer was filed by the complainant as to claim 4 before the present action was instituted").  Defendants did not argue at trial that Goodyear was a prior inventor such that a part of the patent would be invalid.  Rather, Goodyear was an example of a company that was involved in the earlier practices that Petrou's inventive method improved upon.  Accordingly, the Court finds that Section 1928 is inapplicable to these facts.  Because Defendants make no other arguments that MPT is not entitled to costs, the Court agrees that costs are appropriate.

**CONCLUSION**

Accordingly, the parties' motions are GRANTED in part and DENIED in part.  The Court agrees with Defendants that they are entitled to JMOL that they were not willful

infringers.  The Court also finds that MPT is not entitled to attorneys fees.  Accordingly, MPT is entitled to judgment that the patents are valid and infringed by Defendants, awarding damages in the amount of $3,561.64 plus costs, dismissing Defendants' counterclaims with prejudice and permanently enjoining Defendants and their employees, officers, agents, and those acting in concert therewith from using, selling, offering to sell, within the United States, or importing into the United States, the SmartSurface Placard or any product that is not colorably different from the SmartSurface Placard.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  1/19/07